# Huber, Appellant, *v.* Walker.

*Malicious prosecution—Constable—Evidence.*

A constable is not liable in damages to a person whom he has arrested for failing to take the prisoner to the nearest magistrate. If without undue delay he takes him to the magistrate who issued the writ, he performs his full duty; nor can a constable be held in damages, because he takes his prisoner to the office of the prosecutor and holds him there for an hour where such delay is not oppressive to the prisoner nor involves any real delay in getting to a magistrate; nor is the constable liable, if while there, the prisoner is interrogated by the prosecutor as to the participation of other persons in the offense for which he was arrested, and there is nothing to show that the constable took any part in the conversation or used any influence by threats, intimidation, promises or otherwise to induce the accused to make a confession, or to extort money from him, or in any way to take advantage of his position.

Where the facts are not in dispute the question of unreasonable detention is for the court.

Argued Nov. 10, 1915.   Appeal, No. 25, Oct. T., 1915, by plaintiff, from order of C. P. Lancaster Co., Feb. T.,

1913, No. 27, refusing to take off nonsuit in case of Chester Huber v. John Walker. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Trespass to recover damages for false imprisonment. Before HASSLER, J.

At the trial it appeared that Abraham Hess had made a charge against the plaintiff, an alderman of Lancaster City, for wilfully injurying his dam. The defendant, a constable, arrested the plaintiff in Martic Township. After the arrest the defendant took the plaintiff to the mill of the prosecutor, a mile and a quarter away, where they remained about an hour. During this time the prosecutor urged plaintiff to tell all he knew about the alleged offense and who were the other parties to it. The prosecutor then took the plaintiff and defendant in his horse and buggy to a point where they boarded a car for Lancaster. After stopping at several saloons where defendant drank beer, and the plaintiff drank soft drinks, they went to the office of the alderman who issued the writ, and were directed by him to go to the district attorney's office. The district attorney directed the defendant to let the plaintiff go, and the plaintiff after signing a recognizance, went home. In leaving the district attorney's office, the defendant told plaintiff not to tell his father about the affair, and not to bring any one with him to the hearing, and not to have his attorney there. It also appeared that a trolley road runs from Marticville to Millersville where it connects with a road to Lancaster. The station at Marticville is about one and a quarter miles from where the plaintiff was arrested.

When the plaintiff was arrested Mr. Diffenbaugh, his employer, offered to go his bail, but the defendant told him he could not take him, as he was not worth $500, which Mr. Diffenbaugh did not deny. Mr. Diffenbaugh then asked the defendant to take the plaintiff to his

father, but the defendant told him he had seen his father the night before, and he had told him to take the boy and it would be all right. The father testified that he told the defendant that the plaintiff would have to go to jail, saying, "I can't help it; I have a little place here and debt on it as much as it is worth; I don't want to get into trouble."

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was in refusing to take off nonsuit.

*John A. Coyle,* with him *William H. Keller,* for appellant.—When the defendant arrested the plaintiff it was his duty to take him before the alderman who had issued the warrant without any unnecessary delay: Kirk v. Garrett, 35 Atl. Rep. 1089; Twilley v. Perkins, 26 Atl. Rep. 286; Blocker v. Clark, 54 S. E. Rep. 1022; Green v. Rumsey, 2 Wend. 611; Owen v. Schmidt, 14 Philadelphia 183.

The delay in taking his prisoner before the alderman was particularly oppressive in the instant case because the defendant took the plaintiff to the mill of the prosecutor, and there tried, or allowed the prosecutor to try, to wring a confession and implication of others out of his youthful prisoner: Holley v. Mix, 3 Wend. 350; Rouse v. Mohr, 29 Ill. App. 321.

The law is well settled that where an officer in the execution of a valid process exceeds his authority and acts oppressively, he is liable in damages therefor: Atwood v. Atwater, 61 N. W. Rep. 574; Wentworth v. The People, 5 Ill. 550; Bath v. Metcalf, 14 N. E. Rep. 133.

*H. Frank Eshleman,* with him *H. Edgar Sherts,* for appellee.—Appellant was taken with reasonable promptness to the magistrate: Hopner v. McGowan, 116 N. Y. 405.

OPINION BY HENDERSON, J., March 1, 1916:

It is not controverted that the arrest of the plaintiff was lawful. Comment is made on the fact that the constable when at the house of Mr. Diffenbaugh where the arrest was made inquired whether anybody was about before he told the young man he had a warrant for him and that he untruthfully stated to the boy that he had seen his father and that the father told him he was unwilling to go bail for him and that it would be all right to arrest him or words to that effect. But this conversation occurring before or after the arrest is not important on a question of unlawful arrest. The officer may have desired to make the arrest with as little notoriety as possible and it was admittedly true that he had a conversation with the father in which the defendant said to him: "I come to see you in regard to your son"; to which the father replied: "What is the matter?" The constable said: "He is going to jail"; whereupon the father said: "He will have to go; I can't help it; I have a little place here and debt on it as much as it is worth; I don't want to get in trouble." The fair implication from this language was that the father was unwilling to assume any financial responsibility on account of the son. The additional statement even if untrue that the defendant said the boy's father told him, "Just come down and take the boy. It will be all right," did not tend to establish an illegal arrest or to support the substantial charge of an unlawful detention. Nor is there material substance in the complaint that the defendant refused to accept Diffenbaugh as bail or to take the defendant to the nearest magistrate to permit bail to be entered. When the suggestion was made that Diffenbaugh would become bail the constable objected that he was not worth $500 and it nowhere appears in the case that that was not true. All that Diffenbaugh said in reply to the constable's statement was "I'd like to know why not." He did not say that he was worth $500. But whether he would have been deemed sufficient by the magistrate the

constable could neither accept bail nor determine the qualification of the bondsman. That was a matter for the consideration of the magistrate alone. Nor was it the obligation of the officer to take the defendant to the nearest magistrate. . The exigency of his warrant was to produce him before the officer issuing it. The power to make the arrest does not include the authority to hold in custody for an unreasonable time. There is implied in such power the obligation to take the accused before the proper magistrate for a hearing or to give bail without unreasonable delay. It is contended that the conduct of the defendant immediately after the arrest in taking the plaintiff to the mill of the prosecutor and waiting there for about an hour before driving to Willow street to take the car for the magistrate's office in Lancaster was an unreasonable detention and that liability arises therefrom. It is alleged that there was another route than that adopted by the officer on which he might have arrived in Lancaster at half past five instead of seven o'clock, and it is contended that because of his failure so to do there was an unlawful detention.

The place of the arrest was about a mile and a quarter from Marticville, through which there was a trolley service to Lancaster. The plaintiff's evidence showed that a car left Marticville at half past four in the afternoon making it possible for passengers to arrive at Lancaster at half past five. The plaintiff quit work at four o'clock and it was about that time that the arrest was made. There was a short delay while the plaintiff changed his dress. It would have been necessary to walk a mile and a quarter to reach the car and this would have called for very prompt action on the part of the constable and the plaintiff. Failure to reach the half past four car would have made necessary a delay at Marticville for an hour before the arrival of the next car. Moreover, it does not appear that the constable had any knowledge of the time when the car left Marticville. There was another trolley line on which the parties went to Lancaster. They first,

however, went to the mill of the prosecutor about a mile and a quarter from the place where the plaintiff was arrested and from there they drove to the trolley station. It was necessary to walk about the same distance in either case and from the mill they were taken in a buggy to Willow street where they got a car. The selection of the route to Lancaster was with the officer and there is nothing in the case to show that the one taken was oppressive to the plaintiff or that it was longer. It appears from the opinion of the court that it was shorter. How much sooner the parties could have arrived at Lancaster if there had been no stop at the mill is not made clear. While at the mill the prosecutor interrogated the plaintiff as to his participation in the injury to the mill dam out of which the prosecution arose and endeavored to obtain from him a confession as to the participation of certain other persons in the act, but there was nothing unlawful in the inquiries of the prosecutor nor is there any pretense that the defendant took any part in the conversation or used any influence by threats, intimidations, promises or otherwise to induce the accused to make a confession. The facts do not support an inference that the defendant acted maliciously or injuriously in stopping at the mill. There was no effort to oppress the plaintiff, to extort money, to obtain his obligation or in any other way to take advantage of his position. The detention after the arrival of the parties in Lancaster consisted of a stop by the constable at two or three places to obtain a glass of beer. The plaintiff declined to drink beer but took a "soft drink." The act of the defendant in stopping at the hotels was well characterized by the learned trial judge as "most improper" but the defendant made no objection to participating in the hospitality of the constable and the delay was only for the time necessary to take the drinks. It does not clearly appear whether the magistrate issued a commitment or not, but it is evident that the accused was taken to the office of the district attorney by the direction of the

magistrate or on the constable's own motion and there the district attorney took the plaintiff's bond for his appearance at a subsequent date and instructed the constable to release him which was accordingly done. It is not asserted that the constable exercised any control over him after leaving the district attorney's office and the conversations occurring thereafter are not relevant to the issue. Where the facts are not in dispute the question of unreasonable detention is one for the court: Mulberry v. Fuellhart, 203 Pa. 573, and we agree with the trial court that the evidence does not disclose a case of unreasonable detention. The discussion of the case by the trial judge on the motion to take off the nonsuit contains a justification of the conclusion reached. After a patient consideration of the evidence we are unable to obtain any view which discloses an enforceable cause of action.

The judgment is affirmed.