## Mulberry, Appellant, *v.* Fuellhart.

*False imprisonment—Sheriff—Trespass ab initio.*

Where the sheriff arrests a man for resisting the execution of legal process, and without at once taking him before a magistrate, places him in jail, while two physicians examine him to determine his mental soundness, and while the examination is being made he is confined for two nights and one day, when he expresses regret for his action, and promises to go home and behave himself, the failure of the sheriff to take his prisoner before a magistrate is not a direct and positive act such as is required

to convert a legal into an unlawful action and make the sheriff a trespasser ab initio.

Argued May 6, 1902. Appeal, No. 313, Jan. T., 1902, by plaintiff, from judgment of C. P. Warren Co., March T., 1900, No. 29, on verdict for defendants in case of John Mulberry v. John H. Fuellhart and Fred W. Fuellhart. Before McCollum, C. J., Mitchell, Brown, Mestrezat and Potter, JJ. Affirmed.

Trespass to recover damages for false arrest. Before Lindsey, P. J.

The facts appear by the opinion of the Supreme Court.

The plaintiff presented these points:

1. If the jury believe that if Fred Fuellhart, one of the defendants, arrested the plaintiff without a warrant, handcuffed him and kept handcuffs on him from about 11 o'clock A. M., until about 6 o'clock P. M. on June 29, 1898, conveyed him through Spring Creek and other towns in Warren county, where justices of the peace were located, delivered him to the jail of Warren county and into the custody of John Fuellhart, the other defendant, who kept him thence incarcerated until about noon of the second day thereafter, and then released him without during said time making any charge against him or taking him before any magistrate, both defendants are guilty of a trespass against the person of the plaintiff and the jury must award to him damages therefor. *Answer:* This point we answer in the negative. [1]

7. The summoning by the sheriff of two physicians to examine into the mental condition of the plaintiff, while under arrest, is not a justification of his act in keeping the plaintiff incarcerated the time he did, it not having been shown that such examination was based on any legal process or order, nor that the plaintiff was then or at any time insane. *Answer:* Answered in the negative. [2]

The court charged in part as follows:

[Now we say to you that if the sheriff had reason to believe that John Mulberry was insane and was not responsible for his conduct, and he did not desire to pursue him or prosecute him for the offense for which he was committed, because it is a

violation of the law to interfere with an officer in the execution of his process, and if the sheriff had reason to believe from the report which the deputy had given him of his conduct, that he was not responsible, and did not wish to prosecute an irresponsible person for a violation of the law, then it would not be unreasonable for him to keep him a reasonable time until he could ascertain these facts.    These facts ought to be judicially ascertained in a reasonable time.    But if the sheriff for the purpose of ascertaining whether he should be prosecuted for a violation of the law , or whether he should be confined as an insane person, instituted this inquiry into his condition honestly and for the purpose of determining this fact, we think it would not be unreasonable so to do.] [3]

[If you find from the evidence that the plaintiff did obstruct the deputy sheriff in the execution of his process, the plaintiff was in the wrong ; he was committing an offense against the law and the sheriff should not be held to too strict accountability.    He should not take the law into his own hands but he had a right, as I have already instructed you, to arrest the plaintiff and to convey him to the jail and to keep him a reasonable time until the process could be executed and possession delivered to the plaintiff in the writ which was in the hands of the sheriff.] [4]

Verdict and judgment for defendant.    Plaintiff appealed.

*Errors assigned* among others were (1–4) above instructions, quoting them.

*J. G. Smith*, with him *J. O. Parmlee*, for appellant.—It is the duty of an officer making an arrest without warrant to take the accused before a magistrate for formal accusation and hearing, and in the absence of regular proceedings by information, either before or after arrest, a detention is illegal : Burk v. Howley, 179 Pa. 539.

Even though the arrest was legal when made, if these defendants failed to recognize the rights of this plaintiff and detained him unlawfully, they became trespassers ab initio ; Carpenter's Case, 8 Coke, 146 ; Wilson v. Ellis, 28 Pa. 238 ; Carrier v. Esbaugh, 70 Pa. 239 ; Brock v. Stimson, 108 Mass. 520 ; Pastor v. Regan, 30 N. Y. Supp. 657 ; Meurer's App., 119 Pa. 115.

In any case in which insanity is a matter of doubt, the party putting any restraint upon the individual's liberty takes upon himself the responsibility of justifying it unless he first procures from a competent court an adjudication that mental competency is wanting : Cooley on Torts, page 178.

An officer is not authorized to arrest a person without a warrant on the ground that he is insane, unless he is dangerous : Look v. Dean, 108 Mass. 116.

*W. W. Wilbur*, with him *Hinckley & Rice*, for appellees.— An officer may arrest for a breach of the peace in his presence and deposit the prisoner in jail, and the jailer is bound to receive him and detain him a reasonable time, under the circumstances, until a hearing is had before a magistrate : Com. v. Deacon, 8 S. & R. 47 ; Brooks v. Com., 61 Pa. 352 ; McCullough v. Com., 67 Pa. 30 ; Brock v. Stimson, 108 Mass. 520.

OPINION BY MR. JUSTICE POTTER, October 13, 1902 :

It appears from the evidence in this case that a writ of possession was given to one of the defendants, John H. Fuellhart, the sheriff of Warren county, directing him to deliver possession of the premises described in the writ, and then in the possession of the plaintiff, to one Ralph Carrier. Anticipating the issue of the writ, Mulberry, the plaintiff, called upon the sheriff, and said that he would kill any man who came to put him off the place. And when the deputy sheriff attempted to execute the writ, he did resist the officer with so much wilfulness and violence that it was necessary to place him under arrest, and on the evening of the same day he was lodged in the county jail.

For his conduct in thus obstructing the execution of legal process, he was deserving of prompt prosecution, and he should have been taken before a magistrate and an information made against him as soon as the circumstances would permit. The sheriff, however, seemed to doubt the mental soundness of the plaintiff, and was loth to prosecute. Instead of taking the plaintiff before a magistrate the next morning, and making a formal accusation against him, he called in two physicians, and requested them to make an examination as to the mental soundness of the prisoner. This proceeding was for the sheriff's guidance alone, and seems to have been based upon his considera-

tion for the plaintiff.  The physicians made the examination, but owing to the time which they took for consideration were not ready to report until the next morning, and even then were not clear in their opinion, but expressed themselves as not satisfied that the man was insane.

The appellant had then been confined in the jail two nights and one day, and the sheriff testifies that he then went in and had a conversation with the prisoner, who expressed his regret at the trouble with the deputy, and said that he did not want to be prosecuted, and that he would go home and behave himself if the sheriff would let him out and not prosecute him. He made no request, however, at any time to be taken before a magistrate for a hearing, or to be allowed to furnish bail. Accordingly the sheriff released him, after having been under arrest from Wednesday until Friday morning.

· The plaintiff apparently did not appreciate the leniency of the sheriff in declining to prosecute him, but after waiting eighteen months began this action to recover damages for false imprisonment.  The result of the trial was a verdict for the defendants.

In the first assignment of error the plaintiff complains of the refusal of the trial court to instruct the jury that the release of the plaintiff without making a charge against him before a magistrate, made the defendants guilty of a trespass against the person of the plaintiff, for which the jury must award damages. This point as framed was properly declined, for it ignored the evidence that the plaintiff was released without prosecution, at his own request, and with his own consent.  The jury were instructed that the sheriff could not detain the plaintiff an unreasonable time in confinement, but that it was his duty to give him a hearing as soon as the circumstances of the case would permit.  They were also instructed that if they found from the evidence that the plaintiff was detained for an unreasonable time, or if they found that a hearing might have reasonably been had before a justice of the peace without lodging him in jail, then there might be a recovery of damages.            ·   ··

The verdict must be taken as settling the fact as to both of these points in favor of the defendants.  If there was any question of fact whatever in the case for the determination of the jury, the plaintiff cannot fairly complain of the manner of

its submission. After having been told substantially the same thing in the charge, the jury were definitely instructed by the affirmance of the plaintiff's second point, that "It is the duty of an officer, after making an arrest with or without a warrant, to take his prisoner with no unnecessary delay before a committing magistrate for a hearing. If he is guilty of unreasonable delay in so doing, or releases the prisoner after detaining him an unreasonable time, without granting to him the privilege of a hearing, he is guilty of a trespass, even if the original arrest were justifiable."

But the appellant is not satisfied with this, and now contends that the failure of the sheriff to prosecute rendered him a trespasser ab initio, and that for this reason the plaintiff was entitled to binding instructions in his favor.

Undoubtedly there are cases where an act in the first instance lawful, becomes afterwards a trespass ab initio. For instance, where a lawful levy is made, but goods are sold without the notice required by the statute. Or where goods are distrained upon for rent, and sold without having been appraised and advertised in accordance with the act of assembly. But in such cases, as we understand the line of distinction, when the action taken is lawful, it cannot be made illegal ab initio, unless by some positive act incompatible with the exercise of the legal right to do the first act. The propriety of the arrest in this case is not questioned. Neither was the detention malicious nor wilful; it resulted rather from the clemency of the officer. If the sheriff instead of relenting had proceeded to prosecute the plaintiff when the physicians reported that they could not certify to the existence of insanity, there would have been no reasonable ground for complaint. Nor does the conduct of the sheriff in seeking to make sure that he was not pursuing a man of unbalanced mind, call for serious censure. His mistake or his fault then, lay, not in the arrest, nor in the detention for what under the circumstances was not an unreasonable time. It consisted merely in his failure to prosecute. This was at most an omission or a neglect to do, what the plaintiff after the arrest was once made, had perhaps a right to demand of him.

But it has been well said that "not doing a thing, cannot make a party a trepasser ab initio, because not doing is no trespass."

In Averill v. Smith, 17 Wallace, 91, it is said that: "Extended argument to show that a mere omission of duty, or neglect to do what another has a right to exact, or any other mere non-feasance, will not amount to such an abuse of authority as will render the party a trespasser ab initio, is quite unnecessary; as the proposition is not controverted, nor can it be, as it is supported by the highest judicial authority."

The failure therefore of the sheriff to proceed with the prosecution was not a direct and positive act, such as is required to convert a legal into an unlawful action, and thus make him a trespasser ab initio. Particularly is this true in view of the fact, as shown by the evidence, and determined by the verdict of the jury, that the plaintiff consented to his discharge and the termination of the proceedings against him.

The assignments of error are overruled, and the judgment is affirmed.