IRA BATES *vs.* FRANK M. REYNOLDS.

Norfolk.    March 26, 1907. — May 15, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*False Imprisonment.    Officer.    Evidence,* Circumstantial.

If, in an action against the chief of police of a town for false imprisonment, there is evidence on which it is possible to find that the defendant arrested the plaintiff, and it appears that when the plaintiff was at the police station the defendant offered to let him go home, whereupon the plaintiff said that he preferred to stay there over night, and the defendant led him to a cell where he slept and the next morning the plaintiff was sent home in a carriage, without his case ever having been presented to the court, this warrants a finding that

there was an amicable arrangement between the plaintiff and the defendant that the plaintiff should be released from arrest and should make no claim against the defendant for damages, and sustains a verdict for the defendant which may have been based on that ground, although there is no direct evidence of an agreement to make no claim for damages.

TORT for the alleged false imprisonment of the plaintiff by the defendant, who appears to have been the chief of police of the town of Hull, although this is not stated expressly in the record.    Writ dated July 7, 1905.

At the trial in the Superior Court before *Hardy,* J. the plaintiff testified in substance as follows: That on Saturday, May 20, 1905, between the hours of five and seven in the afternoon and evening, he was in the town of Hull in a hotel kept by one Sweeney, and drank some beer there; that while coming out from the hotel upon a private passageway he fell on the steps of the hotel, breaking his leg and sustaining other injuries; that he was placed upon a chair and while in that position was arrested by the defendant and was taken to the Hull police station, was examined as to his physical condition by the defendant, and then was locked in a cell and was kept in the cell from the time of his arrest until the next morning, which was Sunday, and that no food or water was given him or medical attendance procured, although he asked for it; that late on Sunday morning the defendant procured a team and sent him home; that he did not take him to court then or at any time thereafter, and that the plaintiff suffered great pain and injury because of the alleged arrest and wrongful treatment.

One Dr. Fernald testified in substance, that he was called to attend the plaintiff on Sunday, May 21, 1905, and found him suffering from a broken leg; that the leg could have been found to be broken upon ordinary examination, and that failure to call medical assistance while the plaintiff was in the police station materially retarded the plaintiff's recovery.

The defendant testified that he was called from headquarters by officer Tremaine on the evening of May 20, 1905, to the Hull police station, and found the plaintiff sitting in the chair; that he greeted him, examined his foot and worked it from side to side; that he did not discover that it was broken; that he washed the plaintiff's face and asked him if he wished to go home; that the

plaintiff said he preferred to stay there over night and he led him to a cell where he left him, and that he did not see him again until the next forenoon when the plaintiff was being helped into a carriage to be sent home.

One Tremaine, the police officer referred to above, testified that he was told that some one was injured and needed his help ; .that he found the plaintiff on the ground ; that he called for assistance and removed him to the station house and notified Chief Reynolds, the defendant ; that he did not arrest the plaintiff ; that he had nothing more to do with him except that he was present when the plaintiff was sent home the next day ; that his friends were not notified ; and that no physician was called.

One Mitchell, another police officer, testified in substance that the plaintiff was not locked in a cell ; that water was given him when he asked for it ; that his face was washed and that he was sent home the next morning ; that no physician was called and no medical care was given ; that no notice was sent to his friends ; and that he was not booked as a prisoner.

The above was all the evidence material to the case.

The plaintiff excepted specifically to the following portions of the judge's charge :

1. To that portion of the charge in which the court instructed the jury as follows :

" Now there is another question presented here as to his release without presentation to the court.    Of course I am dealing only with the testimony of the plaintiff, ——— If you see fit to disbelieve all the evidence on the part of the defendant.

" It seems that about ten o'clock the next morning he was discharged.    Under our statutes and under the ordinary proceeding of the courts in connection with the arrest of prisoners it is the duty of the officer within a certain time, within twenty-four hours, if the arrest happens to be on some other day than Saturday (and if made on Saturday night then Monday morning), that he should be presented or brought before the court.    It seems, as I remember the evidence, that this man, if you believe the plaintiff's story, was taken in custody on Saturday night.    That he was released somewhere about ten o'clock on Sunday.

"Now, the question is, under that release, if there was a release, has the defendant abused the process of the court. If an officer, having arrested a man, sees fit to discharge him without presenting him to court in accordance with the requirements of the statute, such officer is liable to a penalty. He is liable to prosecution and a fine, as I remember the statutory law."

2. On the ground that there was no evidence of a request, agreement or understanding relative to the plaintiff's discharge, the plaintiff excepted specifically to that portion of the charge in which the court instructed the jury as follows:

" A prisoner may if he sees fit request the officer to discharge him from custody. He may make that request, and if there is a request made by the prisoner and he so far requests it, and he is discharged with the understanding that he will make no claim against the officer, and such agreement is intelligently and fairly made between the officer and prisoner, then the officer would not be liable for prosecution by the party arrested. That is, the man who thus secures his discharge by requesting it or consenting to it where it appears that the agreement is that no claim is to be made for damages by reason of his detention, where they understand each other, such a person would have no right to bring a suit against the officer afterwards civilly. It would be said that he waived a right to make that claim because of his consent to discharge.

"Now if you are dealing with the plaintiff's evidence here, it is for you to say whether he consented to the discharge. Whether there was any intention at that particular time manifested on his part that no claim would be made for damages. Whether they understood each other fairly and intelligently."

3. To that portion of the charge in which the court instructed the jury as follows:

" I think some of you were on the jury last week when I said an officer might be the agent of a city or town on receiving a notice about a street, but these officers do not act for and in behalf of each other, and supposing you find upon the plaintiff's testimony that Mr. Tremaine made an arrest here in the absence of Mr. Reynolds, that would not make Mr. Reynolds liable. He would not be the principal who would be liable for the act of Tremaine if he did not participate in this arrest.

" The evidence on the part of the plaintiff tends to show that the defendant was there. This is denied by Tremaine, by Mitchell and by Reynolds himself. They say he was not there when the body of this plaintiff was taken possession of, if you find a possession was taken in any way. Tremaine says he found him in that position, in a condition of disability and he needed help. If you find there was a removal to the station on the part of Tremaine for the purpose of making an arrest and the arrest was reported to Mr. Reynolds and Mr. Reynolds then took part in an abuse of process, if he then controlled and restrained unlawfully the liberty of the plaintiff and participated in the act of Tremaine in restraining him unlawfully then he might be considered liable in an act of trespass, if you find the other things proved, about which I shall speak to you later, but in order to show that a man is guilty of a trespass or an assault upon another it must be shown that he either ordered or directed it or was present and participated in it in such a way that he can be said to be present.

" It does not mean that if three officers are near together that all must touch the prisoner. If one directed it and another touched the person of the prisoner, of the party arrested, and another helped afterwards and they were so near each other as to assist, then they may be said to be participants, and as participants they would all be equally liable as principals, but if you find that Mr. Reynolds was absent while Tremaine was making the alleged arrest, if you find an arrest, the mere fact that he was the chief of police does not make him liable in this case except you find further facts in accordance with the plaintiff's testimony."

4. On the ground that there was no evidence of a request, agreement or understanding relative to the plaintiff's discharge, the plaintiff excepted specifically to that portion of the charge in which the court instructed the jury as follows:

" It is for them to draw all the inferences they may. It is for them to say what the inference is."

The jury found for the defendant; and the plaintiff alleged exceptions.

*T. Mannix,* for the plaintiff.

*J. O. Burdett,* for the defendant.

SHELDON, J. No question of pleading was raised at the trial, or is open upon these exceptions. The only objection to the instructions given as to the effect of an understanding between the parties that the plaintiff should be released from arrest and should make no claim against the defendant for damages was the contention that there was no evidence upon that question. *Burnett* v. *Smith,* 4 Gray, 50. *Knight* v. *Overman Wheel Co.* 174 Mass. 455, 465, 466.

We agree with the plaintiff that it is impossible to say as matter of law, however improbable it may be in fact, that the jury upon the judge's charge may not have found that the defendant did either arrest or detain the plaintiff, and have based their finding for the defendant upon the ground that the defendant released him at his request or with his consent upon the understanding that he was to make no claim for damages. If accordingly there was no evidence to warrant such a finding, the exceptions must be sustained. *Phillips* v. *Fadden,* 125 Mass. 198. *Brock* v. *Stimson,* 108 Mass. 520.

But we are of opinion that from all the evidence the jury might reasonably have drawn the inference that there was such a request and understanding. The defendant testified that the plaintiff said he preferred to remain at the station over night, and that he was accordingly kept there and sent home in a carriage the next morning. The jury well might have found from this and the other evidence that the plaintiff desired to be kept there during the night and released and sent home the next morning, that is, that what was done was practically done at his request. This would bring the case within the doctrine of *Caffrey* v. *Drugan,* 144 Mass. 294. In that case, as in this, there was no direct evidence of an agreement to make no claim for damages, but only of the plaintiff's request to be released; and it was held that an instruction like that now complained of should have been given. To the same effect see *Joyce* v. *Parkhurst,* 150 Mass. 243. The jury might find that everything was amicably understood between the parties.

The question of the defendant's liability for participating with Tremaine in an unlawful arrest or imprisonment of the plaintiff was left to the jury with proper instructions.

*Exceptions overruled.*