[Civ. No. 2128. Second Appellate District, Division Two.—July 10, 1919.]

IRA H. STUBBS, Respondent, v. MARY E. ABERCROMBIE et al., Defendants; HARLAN G. PALMER, Appellant.

[1] CRIMINAL LAW — SUFFICIENCY OF COMPLAINT.—In determining whether a criminal complaint states a cause of action, courts are limited to the contents of the complaint. It is not a question as to what the evidence on the trial may disclose.

[2] Id.—Issuance of Warrant and Arrest—When Legal.—Where a criminal complaint measures up to the statutory requirements, the justice issuing a warrant for the arrest of the accused acts legally in issuing the warrant, and the arrest of the accused under and by virtue thereof is legal.

[3] Id.—Larceny of Executed Deed — Sufficiency of Complaint — Averment of Ownership.—A criminal complaint which charges the defendant with stealing, taking, and carrying away a certain *executed* bargain and sale deed of a stated value, states a public offense within the provisions of section 492 of the Penal Code. The fact that the deed is averred to be the property of the person therein named as grantor does not change the nature of the transaction.

[4] Id.—Loss of Property Through Fraud—Arrest of Guilty Person—Insufficient Complaint—Liability for Damages.—Where a person who has been caused to lose her property through the fraud and duplicity of another, in good faith and without malice, places her complaint before the district attorney of that county, the fact that the criminal complaint under which the person who committed the fraud is arrested fails to state a public offense will not render her liable to such person for damages.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Reversed.

The facts are stated in the opinion of the court.

A. J. Hill and David R. Faries for Appellant.

Frank A. McDonald for Respondent.

THOMAS, J.—This is an action whereby the plaintiff seeks to recover from the defendants the sum of fifty thousand dollars for damages alleged to have been sustained by him by reason of false imprisonment.

The material allegations of the amended complaint, so far as the gist of the present action is concerned, were denied. Demurrers interposed by defendants were overruled by the court. When the case came on for trial the defendant Lyons, the constable, and Palmer, the justice of the peace, moved to strike the amended complaint from the files, so far as they were concerned. This motion was denied. The court granted a motion on the pleadings to dismiss as to the defendant Lyons; and the action thereupon proceeded against the defendants Mrs. Mary E. Abercrombie, who swore to

the criminal complaint, which was the basis of the issuance of the warrant of arrest, and Harlan G. Palmer, the justice of the peace, who issued the said warrant. Judgment was given to plaintiff against the defendants in the sum of fifty dollars.

Each of these two defendants has appealed separately. By proper order of the court, made on stipulation of all parties concerned herein, both appeals were consolidated; and it was further stipulated that the transcript and briefs on appeal filed herein for the defendant and appellant Palmer might be used by all the parties hereto as the transcript and briefs in such consolidated appeals. The appeals are taken by the alternative method.

The facts, so far as material here, are as follows: Plaintiff, at the time of the transaction out of which this case arose, was a real estate dealer. He offered to defendant, Mrs. Abercrombie, an equity in a bungalow in the city of Hollywood and eight hundred dollars in cash in exchange for a lot owned by her in Culver City, which she accepted, and thereupon she executed and conveyed her property to one Margaret Turner, who, as plaintiff informed her, was the owner of the Hollywood property. This deed and certain escrow instructions were placed in escrow. Shortly thereafter plaintiff told Mrs. Abercrombie that the lot she was transferring to Margaret Turner, and the building thereon, had been resold to Mr. Amenzo W. Brown; that this new deed should be substituted in escrow for the former deed, and that in this way the expenses of recordation and escrow fees could be saved. Mrs. Abercrombie, being apparently of an obliging disposition, consented to this arrangement, which was by her carried out. Plaintiff thereafter procured the first deed referred to above, and pretended to, and apparently did, destroy and throw it into a wastebasket. In fact, however, he did not do so, but put the same into his pocket, and later placed it in escrow with another title company with instructions to have the same recorded. At the same time and place plaintiff also placed in escrow a deed from Margaret Turner to Amenzo W. Brown, executed by himself as attorney in fact for said Margaret Turner. Shortly thereafter plaintiff called and obtained from the escrow company the deed from Mrs. Abercrombie to Margaret Turner, and himself had it recorded, thereby

causing the records in the county recorder's office to show a transfer of the property from Mrs. Abercrombie to Margaret Turner. After being recorded this deed was returned to the escrow company and its escrow completed, Mrs. Abercrombie's lot being sold to Amenzo W. Brown, and the plaintiff received a check for $1,615, that being the amount paid by Brown, less escrow and recordation fees. Meanwhile the first escrow failed because of Mrs. Abercrombie's loss of record title. From what has been said it would appear that the result of this legerdemain in reality is, that Mrs. Abercrombie conveyed her lot in compliance, as she supposed, with her understanding with the plaintiff, but received nothing in exchange therefor; while Mr. Brown got the lot and the plaintiff the money. The record nowhere discloses that Margaret Turner has ever transferred the Hollywood property or paid any money to Mrs. Abercrombie.

It is not necessary for this court to brand the foregoing transaction by any designation. The brand is obvious.

Upon discovering the foregoing facts, Mrs. Abercrombie went to the office of the district attorney and stated the facts, after which she was advised that a public offense had been committed by plaintiff, and, by one of the deputies in that office, a criminal complaint was prepared, charging plaintiff with the crime of grand larceny. Before affixing her signature thereto, Mrs. Abercrombie took the complaint to the defendant Harlan G. Palmer, the justice of the peace aforesaid, and signed and swore to it before said Palmer as justice of the peace. A warrant of arrest was issued thereon, and the plaintiff arrested, arraigned, and, in default of bail, committed to the county jail. Three days later, before another justice, plaintiff was given a preliminary hearing, and the said charge dismissed on the ground that the criminal complaint did not state facts sufficient to constitute a public offense. Shortly thereafter he brought this action.

From the record before us it appears that plaintiff brought this action originally against Mrs. Abercrombie alone for alleged malicious prosecution. A demurrer was interposed to the complaint and sustained by the court. The plaintiff then, by way of alleged amendment, filed an amended complaint against Mrs. Abercrombie, and included with her as defendants George W. Lyons, the constable who arrested him,

and Harlan G. Palmer, the justice of the peace aforesaid, and changed his cause of action from one for malicious prosecution to one for false imprisonment.

On the trial it appears that the court refused to permit the defendants, Abercrombie and Palmer, to show that they, or either of them, were not actuated by malice, or that they acted in good faith, or under advice of counsel, or that there was probable cause for the arrest. The court held that the defendants were liable to the plaintiff, and that the liability could not be measured in merely nominal damages, but must be for a reasonable attorney's fee and actual compensatory damages.

Three "fundamental questions," as appellants designate them, are presented to us, viz.: (1) "Should the plaintiff's change of cause of action have been authorized?" (2) "Did the criminal complaint [referred to in this action] state a public offense?" (3) "When is a justice of the peace liable for false imprisonment, and to what extent?"

The first question presented is a close one. Under the common law the courts had no power to allow an amendment which introduced a new and distinct cause of action to an existing pleading. "In a majority of the states the courts have established the doctrine that the powers conferred upon them, under the codes and practice acts, in respect to amendments which set up a new and distinct cause of action, are no greater than that existing at common law, and that they are not authorized to grant such amendments at any stage of the proceedings." (31 Cyc. 409 et seq.) Our supreme court has held, in the case of *Frost* v. *Witter*, 132 Cal. 421, [84 Am. St. Rep. 53, 64 Pac. 705], that "all that can be required . . . is that a wholly different cause of action shall not be introduced; . . . that a complainant is not at liberty to abandon the entire case made by his bill, and make a new and different case by way of amendment," and that "the matter of the amendment must not be entirely foreign to the original complaint."

"In false imprisonment the essence of the tort consists in depriving the plaintiff of his liberty without lawful justification, and the good or evil intention of the defendant does not excuse or create the tort. The plaintiff's grievance is the use against him of force, actual or threatened. Consequently, in the common-law procedure, the action must be

brought in trespass. But in the case of malicious prose-
cution or abuse of process, the process is valid and in itself
justifies the restraint or imprisonment. To deprive the de-
fendant of its protection, it is necessary to show malice,
want of probable cause to institute the proceeding, or some
oppressive or fraudulent use of the machinery of the law.
Consequently the malice or evil intent is the gist of the tort,
the injury suffered by plaintiff resulting only indirectly
from the wrongful act; that is, the evil intent of the de-
fendant, and the common-law action to be used, is trespass
on the case. Of course, the common-law classification of the
different causes of action has ceased to be important in it-
self, but it illustrates the entirely different legal nature of
the two classes of torts.'' ·(11 R. C. L. 792.) To the same
effect, but in different language, our own supreme court
has held, in the case of *Davis* v. *Pacific Tel. & Tel. Co.,*
127 Cal. 312, [57 Pac. 764, 59 Pac. 698]—which was an
action for malicious prosecution—wherein the court cites
with approval the case of *Nebenzahl* v. *Townsend,* 10 Daly
(N. Y.), 235, and quoting from that decision says: ''The
complaint was for false imprisonment and malicious prose-
cution, which was uniting two causes of action that were
inconsistent with each other; for, if the arrest was without
legal authority, it was not a case of malicious prosecution;
. . . and, if under lawful process, there was no false
imprisonment, the imprisonment being by lawful authority.
Each cause of action is distinct from the other. Thus,
formerly for false imprisonment the remedy was trespass;
and for malicious prosecution it was case. Both cannot exist
upon the same state of facts; or, to put it more clearly, if
the one lies upon the facts, the other does not.'' The fol-
lowing cases, we· think, support this conclusion: *Davis* v.
*Pacific Tel. & Tel. Co., supra; Sterrett* v. *Barker,* 119 Cal.
492, [51 Pac. 695]; *Krause* v. *Spiegel,* 94 Cal. 374, [28 Am.
St. Rep. 137, 15 L. R. A. 707, 29 Pac. 707]; *Wheeler* v.
*West,* 78 Cal. 95, [20 Pac. 45]; *Hackett* v. *Bank of Cali-
fornia,* 57 Cal. 335; *Ramirez* v. *Murray,* 5 Cal. 222; *Wilson*
v. *Lassen,* 5 Cal. 114.

On the other hand, under section 427 of the Code of Civil
Procedure, it appears that such causes of action as those
under discussion may be joined in the same pleading, and
in 11 R. C. L. 791, it is expressly stated that ''very often

a single transaction may constitute both a false imprisonment and a malicious prosecution, and the plaintiff at common-law might have his election to sue in trespass for false imprisonment or in case for malicious prosecution; and in jurisdictions where the strict separation of the forms of action has been abolished, two or more of the above causes of action may be joined in the same suit.'' There is, we think, no doubt but that in either case—malicious prosecution or false imprisonment—so far as the case at bar is concerned, the alleged injuries to plaintiff ''arose out of the same transaction.'' From what appears to us as the weight of authority, it would seem, although we do not so hold, that the trial court erred in granting leave to amend the complaint.

As to the second question, the answer must be in the affirmative. [1] In passing upon this phase of the case courts are limited, we think, to the contents of the original complaint. It is not a question as to what the evidence on the trial may disclose. So considered, the complaint here measures up to every statutory requirement. It follows that the justice of the peace erred in dismissing the case aforesaid. [2] The justice issuing the warrant, therefore, acted legally in issuing the warrant, and the arrest of plaintiff under and by virtue thereof was legal. This being true, the present action must fail.

[3] This case is distinguishable from that of *People* v. *Dadmun,* 23 Cal. App. 290, [137 Pac. 1071], relied upon by respondent, in this: In the Dadmun indictment, though the defendant Dadmun was named as the grantee in the deed, it did not appear that the deed had been delivered. If it had been delivered, it became the defendant's property and the taking if it was not larceny. If it had not been delivered, it was not an executed instrument and had no intrinsic value, particularly in the absence of an allegation to that effect. In the present case the criminal complaint, which gives rise to the action for false imprisonment, alleges that the defendant, ''did steal, take and carry away a certain bargain and sale deed *executed* by Mary E. Abercrombie to Margaret Turner, conveying Lot 10, in Block 19, Tract 2444 of Culver City, of the value of $1000.00, . . . and the personal property of Mary E. Abercrombie.'' Here was an executed deed. The value is alleged. The fact that the deed was averred to be the property of the grantor does not

change the nature of the transaction. The real property may have been retransferred to her by Margaret Turner, and the deed from herself may thus have become an important link in her chain of title. At any rate, the facts alleged bring the instrument in question within the provisions of section 492 of the Penal Code.

It is unnecessary to discuss the third question.

[4] In view of the audacious and reprehensible conduct of plaintiff, as disclosed by the record here—he having caused Mrs. Abercrombie to lose her property, and then bringing this action against her because, after discovering his duplicity and the fraud he had perpetrated upon her, she had gone to the office of the district attorney of Los Angeles County, and, so far as the record here discloses, had in good faith, and without malice, placed before that officer her complaint—although that point is not raised in the briefs here—we think we ought to say a word. Even if the criminal complaint had lacked the proper allegations to set forth facts sufficient to constitute a public offense, still, under the facts disclosed by the record here, the defendant, Mary E. Abercrombie, would not be liable. (*Rush v. Buckley,* 100 Me. 322, [4 Ann. Cas. 318, 70 L. R. A. 464, 61 Atl. 774] ; *Tillman* v. *Beard,* 121 Mich. 475, [46 L. R. A. 215, 80 N. W. 248]; *Gifford* v. *Wiggins,* 50 Minn. 401, [52 N. W. 904], and an exhaustive note in reference to the same case in 18 L. R. A. 356.) For these reasons, and many others which appeal to us but which we do not discuss, we are unable to agree with the learned trial court in its conclusions.

The judgment is reversed.

Finlayson, P. J., and Sloane, J., concurred.