## AMERICAN RY. EXPRESS CO. v. STONE et al.

Circuit Court of Appeals, First Circuit.
June 28, 1928.

No. 2224.

Release ⟝29(1)—Employee's statement, after arrest at instigation of employer's agents, waiving claims against officers, also released employer from liability as joint tort feasor.

Where police officer, at instigation of employer's special agents, arrested employee without warrant on suspicion of his guilt of felony, employee's signed statement, requesting his release without being brought before magistrate, and discharging and waiving any claim for damages against members of the police department for arrest and detention, *held* to release employer as joint tort-feasor, where release was not obtained by fraud or duress, since it did not constitute merely a covenant not to sue.

In Error to the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Actions by Otis L. Stone and by John A. Barnes against the American Railway Express Company. Judgment for plaintiffs, and defendant brings error; the cases being docketed as a single case. Reversed, verdicts set aside, and actions returned, with instructions.

Austin M. Pinkham, of Boston, Mass., for plaintiff in error.

Maurice Palais, of Boston, Mass. (William R. Scharton, of Boston, Mass., on the brief), for defendants in error.

Before BINGHAM and JOHNSON, Circuit Judges, and HALE, District Judge.

JOHNSON, Circuit Judge. Two cases, in which Otis L. Stone and John A. Barnes were respectively the plaintiffs and the American Railway Express Company the defendant, were tried together in the United States District Court for the District of Massachusetts. They were actions of tort for false imprisonment, and a verdict was returned for the plaintiff in each case. Upon writ of error, these cases were docketed in this court as a single case.

The plaintiff in each case was an employee

of the defendant. Stone was a foreman in charge of a crew of men whose duty it was to load and unload cars.

Some time before October 1, 1924, the defendant suffered losses of articles in its possession as a carrier.

There was evidence that a teamster by the name of Delong, in the employ of the Coyle Fish Company, reported to the defendant that Stone had applied to him to take a couple of automobile tires from the shed of the defendant, that he refused to do so, and that these tires had been taken from the possession of the defendant; that the plaintiff, Stone, was first summoned to the office of the defendant and examined; that he at first denied that he knew anything about the taking of tires, or that he had had any talk with Delong, but finally admitted that Barnes told him that another employee, Gallagher, had some tires in his possession and asked him to arrange to get them from the shed of the defendant; that he had spoken to Delong about taking the tires away, but the latter refused to take the tires and talked to him about the danger of tampering with other people's property; that a typewritten statement was then prepared, which Stone read over carefully and signed. This was dated October 1, 1924, and was, in substance: That the statements it contained were made of his own free will without promise or threat of any kind; that some time near the latter end of the spring of 1924 Barnes came to him and asked him to arrange with Delong to take for him (Barnes) a couple of automobile tires from the express company's shed; that he spoke to Delong, who advised him of the danger of taking other people's property, and refused to do it; that he understood at the time these tires were the property of the American Railway Express Company. This statement was witnessed by two of the special agents of the defendant, Boyle and Given.

Barnes was then sent for, and he signed a statement, after being shown what Stone had signed, which was in substance as follows: That some time near the latter end of the spring of that year employee Gallagher came to him and told him he had a couple of tires put away that belonged to the express company; that he (Barnes) then spoke to Stone about the matter, who asked him to wait until he saw Delong and ascertained whether he could take them away or not.

There was evidence that Barnes read this statement and signed it in the presence of the same special agents.

After interviewing Gallagher, a policeman was summoned by telephone and the statements submitted to him. In response to the call Policeman Spinney came, and in the office of a Mr. Gleason, at the North Station, he saw the special agents, Boyle and Given, and Stone, Barnes, and Gallagher. He testified that Given told him there had been a larceny of automobile tires which they had been investigating, and that Stone and Barnes had made certain statements. Spinney read the written statements and said it was no place to make an investigation there, and they had better be taken up to the station. He further testified that Given said in substance to him that he wished him to arrest these men, and that, when he read the statements, "I was interested enough to take them up to the office for further investigation." He then telephoned for a police patrol wagon and took Stone, Barnes, and Gallagher to the police station, where they were further examined.

He also testified that Delong came to the station and was there in the presence of Stone and Barnes; that after talking with Gallagher he told the plaintiffs that as a result of his investigation he did not consider "they were deeply enough interested to hold," and told them that they had a form of release, and "if they wanted to sign it they could go, and if they did not wish to they would have to go to court and go through the regular channels"; that this was done in accordance with instructions received by him in cases were it was found there was not sufficient evidence to hold the accused; and that the plaintiffs both read the statement submitted to them and signed it before the clerk.

The following is the release signed by each of the plaintiffs at the police station:

"Commonwealth of Massachusetts.

"October 1st, 1924.

"To the Officer in Charge of Division 1, and All Other Officers Assisting in My Arrest or Detention:

"I, ——, having been arrested the 1st day of October, 1924, for the following offense, namely: Suspicion of felony—hereby request that I be released from custody without being brought before a court, and, in consideration of my being released as herein requested, I hereby discharge and waive any and all claims for damages which I may have against you or against other members of the police department for the city of Boston because of my arrest and detention on said day and up to and including the date hereof, and more especially all claims for damages for illegal arrest and

imprisonment which I may have against Capt. McConnell, Spinney, and Mooney.

"Dated at Boston this 1st day of October, 1924."

The errors assigned are the denial of a request to direct a verdict for the defendant; the refusal to give the following requested instructions: That "if the defendant's agents assisted the police officers in making the arrest they were jointly responsible with the police officers"; that the release signed at the police station relieved the defendant from liability; that it is the duty of the police officers to retain custody of a prisoner until he can be taken before a court, and that they have no power or right to discharge him; and that it was not duress for a police officer, who had arrested a prisoner, to inform him that he cannot release him, but must hold him and take him before a court, unless he signs a request for his discharge and releases the officer from liability. The instruction of the jury that the release signed by each plaintiff did not release the defendant, but merely released the police officers, is also assigned as error.

There are also errors assigned as to the admission of a newspaper article containing an account of the arrest and to the exclusion of evidence in regard to information received by the special agent, Given, which directed his attention towards the plaintiffs.

The main question to be decided, however, and which has been fully argued by counsel upon both sides, is whether the release signed at the police station released the defendant, as well as the police officers.

That the defendant, through its special agents, who had instigated the arrest, was a joint tort-feasor with the police officers, is clear, and the instruction requested, that it was, should have been given.

The offense with which the plaintiff was charged was a felony, and it is settled under the decisions of Massachusetts that, when one is suspected of being guilty of a felony, an officer has a right to arrest him without a warrant, provided he has reasonable cause to suspect that he is guilty (Commonwealth v. Phelps, 209 Mass. 396, 404, 95 N. E. 868, Ann. Cas. 1912B, 566; Keefe v. Hart, 213 Mass. 476, 481, 100 N. E. 558, Ann. Cas. 1914A, 716; Wax v. McGrath, 255 Mass. 340, 151 N. E. 317), but that, having made the arrest, it is the duty of the officer making it to take the arrested party before a magistrate for a determination of whether there was ground to hold him, which could not be settled by the arresting officer (Keefe v. Hart, supra, and cases cited). It has been held, however, if one so arrested consents to his release without being taken before a magistrate, and waives the requirements of the law, and discharges a claim for damages against the officer who makes the arrest, he cannot afterwards complain of the failure of the officer to perform this duty (Keefe v. Hart, supra; Horgan v. Boston Elevated Railway, 208 Mass. 287, 94 N. E. 386; Wax v. McGrath, supra, 344 [151 N. E. 317], and that this is so whether the agreement to discharge the claim for damages is in writing under seal, or is oral (Bates v. Reynolds, 195 Mass. 549, 554, 81 N. E. 260; Caffrey v. Drugan, 144 Mass. 294, 295, 11 N. E. 96).

Whether the release signed at the police station was procured by duress or coercion was not submitted to the jury, and they were told: "You can consider it in a general way, but you have not got to make up your minds whether that was got by the defendant under any kind of undue pressure."

As the defendant was a joint tort-feasor, if the arrest was made without probable cause, the failure to give the requested instruction in regard to the effect of the release on the defendant's liability was erroneous, as well as the following instruction: "Now, I am going to tell you that, as a matter of law, that release does not release the defendant; that it merely releases the police officers, and therefore you need not consider the question whether that release in the police station was a free release, or under duress, as we call it, or anything about it." The decisions of the Supreme Judicial Court of Massachusetts hold that a release, although not under seal, given to one joint tort-feasor discharges all, provided it is absolute and unconditional, and is not simply a covenant not to sue the party released, and there is no evidence of a reservation to sue other joint tort-feasors. Brown v. Cambridge, 3 Allen, 474; Stone v. Dickinson, 5 Allen, 29, 81 Am. Dec. 727; Brewer v. Casey, 196 Mass. 384, 388, 389, 82 N. E. 45; Feneff v. Boston & Maine Railroad, 196 Mass. 575, 581, 82 N. E. 705; Horgan v. Boston Elevated Railway, supra; Cormier v. Worcester Consolidated, 234 Mass. 193, 196, 125 N. E. 549; Muse v. De Vito, 243 Mass. 384, 388, 137 N. E. 730; Gold v. Boston Elevated Railway, 244 Mass. 144, 138 N. E. 251. All joint tort-feasors concerned in the alleged wrong for which the plaintiff seeks redress were discharged by the release of one, if the release was not obtained by fraud or duress, and unless it may be construed as a covenant not to sue the police officers. In some of the decided cases which have been brought to our attention, where an instrument

has been construed to be a covenant not to sue, a reservation to sue or seek redress from other parties concerned was inserted in the release, and in others there was evidence upon which the jury could find that this was the intention of the party who signed it. No reservation was made in this release, and there was no evidence that it was the intention of the plaintiffs to reserve the right to sue other joint tort-feasors. It was an absolute and unqualified release of the police officers and released all who had co-operated with them. Tanana Trading Co. v. North American Trading & Transportation Co. (C. C. A.) 220 F. 783, 786; Kirkland v. Ensign-Bickford Co. (D. C.) 267 F. 472; Spiess v. Sommarstrom Ship Building Co. (C. C. A.) 272 F. 109, 111; The Adour (D. C.) 21 F. (2d) 858, 862. See, also, Carpenter v. McElwain Co., 78 N. H. 118, 97 A. 560; Cleveland v. Bangor, 87 Me. 259, 264, 32 A. 892, 47 Am. St. Rep. 326.

Having reached the conclusion that the release operated as a discharge, not only of the police officers, but also of those who instigated the arrest, it is unnecessary to consider the other errors assigned. As the jury did not, under the instructions of the court, pass upon the question of whether the release was obtained by duress or not, the entry must be in each case:

The judgment of the District Court is reversed, the verdict set aside, and the action returned to that court, with instructions to grant a new trial; the plaintiff in error to recover costs in this court.