KREDIT, Appellant, v. RYAN, et al, Respondents

(1 N. W.2d 813.)

(File No. 8437. Opinion filed January 2, 1942.)
Rehearing Denied March 11, 1942.

**John Carl Mundt,** of Sioux Falls, for Appellant.

**Bailey, Voorhees, Woods & Bottum,** of Sioux Falls, and
**C. H. McKay** and **Joe W. Flood,** both of Salem, for Respondents.

WARREN, J. The plaintiff brought an action to recover damages for false imprisonment. In her complaint she also included claims for damages based on other matters. At the beginning of the trial, the claims in the complaint were narrowed down to false imprisonment. Plaintiff, who was a practical nurse, brought suit against the defendants, R. W. Reid, a rural route mail carrier, Noah Ortman, one of the proprietors of a clinic, Ed Klinkel, manager of the hotel connected with the Canistota clinic (these three defendants lived at Canistota, South Dakota) Joe E. Ryan, as sheriff of McCook County, South Dakota, and the American Surety Company, which was surety on the sheriff's bond.

It would appear that plaintiff and defendant Reid had had an altercation in regard to the possession of a room in a boarding house in Canistota, South Dakota. Reid and his eight year old son were living at the boarding house. Reid feared plaintiff would injure his small boy, who was obliged to remain alone while Reid was away on the mail route, on account of certain threats made by plaintiff which took place during an altercation in which he says that she referred to Reid's occupancy of the room saying: "Don't think you are going to get away with it; I will get even with you." The plaintiff denies that she was guilty of ever making a

threat against the defendant Reid. An attorney in Canistota, South Dakota, was consulted who advised him as to his rights to institute proceedings to require plaintiff to give security to keep the peace. In company with this attorney, he narrated the facts to a Justice of the Peace concerning the trouble and altercation with the plaintiff. The attorney, it would seem, prepared the complaint which was signed by Reid. A warrant was signed and issued by the Justice of the Peace and placed in the hands of Sheriff Ryan who afterwards made the arrest. The record contains evidence to the effect that she resisted arrest; that her conversation, behavior and action seemed strange to the sheriff to the extent that he thought she was mentally unbalanced or insane. Plaintiff was placed in the women's ward of the McCook County jail where she remained until the following afternoon. It would seem that the arrest was made in the early evening and that the Justice of the Peace was out of town and unavailable.

The record contains evidence to the effect that plaintiff repeatedly told the defendant sheriff that she did not want to be taken into court or before the Justice of the Peace. After arriving at Salem, South Dakota, the defendant sheriff at the plaintiff's request put in a telephone call to her brothers in order that she might consult with them about her trouble. This is all denied by the plaintiff. Her brothers arrived the following day. Plaintiff repeated her request that she be released and not taken before the Justice of the Peace. After repeated requests of plaintiff and her brothers, who agreed to care for her, the sheriff released her and took no further proceedings under the complaint and the warrant issued by the Justice of the Peace.

The court directed verdicts in favor of the three defendants, R. W. Reid, Noah Ortman and Ed Klinkel. Upon trial of the other two defendants, the jury returned a verdict finding all the issues in favor of the defendants, Joe E. Ryan and American Surety Company of New York.

A motion for new trial was made and overruled by the court. Plaintiff has appealed from the judgment and order overruling a motion for a new trial.

Appellant contends that the jury being guilty of misconduct, a fair and due consideration of the case was prevented by reason of certain statements made by Juror Charles Erickson, who, it is claimed, disregarded the injunction of the court to not talk to anyone about the case until it had been finally submitted. He nevertheless made a statement, it is contended in an affidavit of Juror Hugo Mayer, to the effect that Ryan had to take Dorothy Kredit by force and that he was doing his duty when he put the "come along" on her wrist because she would not come with him. Juror Mayer, in an affidavit, states that after the case was finally submitted to the jury, Juror Erickson stated in effect: "That he knew all about Dorothy Kredit; that his wife had told him Miss Kredit was a 'cat'; that she was just after the money and that he wouldn't give her anything."

Said Juror Mayer further stated that certain statements influenced his verdict and he thinks that certain statements influenced other jurors in the verdict. There are affidavits by five other jurors, each of said affidavits contains a statement to the effect that Charles Erickson, at the time of deliberating in the jury room, stated to them the portion of Juror Mayer's affidavit last above quoted.

We need not review the authorities of early Dakota territorial days to the present time to the effect that affidavits of jurors cannot be used to impeach their verdict for the reason that appellant in her brief states that she is not unmindful of that general rule of law. It is urged that if this is an exclusion ruling, then how may the fact that jurors received important evidence out of court be brought to the attention of the court. Juror Erickson was permitted to sit on the jury after he had answered the questions asked him concerning his knowledge of the appellant to which he had replied that he did not know her and that he had not heard anything about her case; that no one had talked to him, and that, if anybody did talk to him about the case, he would not be influenced or governed by it; that he was not prejudiced and would act fairly and impartially. Appellant, having discovered that this juror had made certain remarks in

the jury room which she claims amounted to giving evidence before the jury, charges that it does not fall within the rules announced by this court, in a long unbroken line of authorities, that affidavits of jurors can not be used to impeach their verdict. In support thereof, authorities have been cited among which is Slater v. United Traction Co., 172 App. Div. 404, 157 N. Y. S. 909. An examination of this case shows that it is easily distinguishable from the facts which we are dealing with. Space forbids making a lengthy analysis.

In Hansen v. Muller, 65 S. D. 546, 276 N. W. 150, this court sustained the lower court in granting a new trial upon certain nonjurors' affidavits setting out specific acts of misconduct presented to the trial court on a motion for new trial. The jurors involved filed counter affidavits. In the instant case, we are dealing with affidavits given by jurors. In the Hansen v. Muller, supra, this court dealt with affidavits given by outsiders, not jurors, who related facts pertaining to the trial while the jurors made affidavits in substance denying that they had made certain statements to the outsiders. Therefore, a far different question was decided in that case than we are asked to decide in the instant case. We are asked to receive and consider the affidavits of jurors, which in effect amounts to deciding that jurors can, by their affidavits, impeach their verdict. This would be contrary to a long-established line of authorities by this court and other courts. State v. Corner et al. 58 S. D. 579, 237 N. W. 912 and Saunders v. Farmers' & Merchants' National Bank of Milbank et al., 61 S. D. 261, 248 N. W. 250.

In Carpenter v. Union Baking Co., 67 S.D. 151, 290 N.W. 322, 323, this court considered the failure of a juror to make known his acquaintance with the plaintiff and which the appellant assigned as misconduct on the part of the juror. SDC 33.1605(2) was considered by the court and the court's holding seems determinative upon at least the statement of Juror Carlson before he was sworn to serve as a juror. The following language seems compelling, "that the verdict will not be set aside for objection to jurors on grounds which existed before they were sworn unless it is

made to appear that by reason of the existence of such grounds the party objecting has suffered wrong or injustice." See cases following quotation.

In Edward Thompson Co. v. Gunderson, 10 S. D. 42, 71 N. W. 764, this court determined the alleged misconduct of jurors which consisted in the temporary separation of two jurors from the others. The affidavits of the two jurors were read in support of the motion for a new trial. The court, in passing upon the admissibility of the jurors' affidavits, said they should not have been received as it was a "settled law of this state that the testimony of jurors is inadmissible in support of a motion to set aside a verdict on the ground of mistake, irregularity, or misconduct of the jury, or some one or more of them, **except in the cases expressly authorized by the legislature.**" (Emphasis ours.) Our legislature has not, up to the present moment, expressly authorized the receiving of jurors' affidavits by courts except SDC 33.1605(2), and as there is nothing in the facts in the case before us that could possibly be construed to be governed by subdivision 2, we must adhere to our former holdings in an unbroken line of authorities that affidavits of jurors may not be used to impeach and overthrow their verdicts. The Supreme Court of California in Polhemus v. Heiman, 50 Cal. 438, 441, in stating exceptions to the rule that affidavits of jurymen cannot be received to impeach or defeat their verdict, employed certain language indicating that the position of this court was in harmony with the California court in what we said in the Gunderson case, and we quote: "In this State the affidavits of jurymen cannot be received to impeach or defeat their verdict. The prohibition extends beyond cases of willful misconduct on the part of jurors, and to every case in which the affidavits are attempted to be used as ground for setting aside a verdict because of a misunderstanding of its effect by some or all of the jurors who united in its rendition. The only exceptions to this rule are those in which the Legislature has by express enactment authorized such attack upon the verdict by those who rendered it, and it is not pretended that the present case is with-

in any such exception. (Boyce v. California Stage Co., 25 Cal. [460], 474.)"

Appellant feels aggrieved and contends that the court erred in granting the motions for directed verdicts for the defendants, R. W. Reid, Noah Ortman, and Ed Klinkel. In determining this question, we are required to give to the appellant the benefit of the most favorable construction of which the testimony is reasonably susceptible and must consider the testimony as a whole. From the evidence we gather that appellant charges defendant Reid with the absence of good faith in complaining to the Justice of the Peace and signing a complaint in which he charged the appellant with threatening to commit an offense against his person and property pursuant to SDC 34.0302. It would seem from the evidence that Reid had an altercation with the appellant on the afternoon prior to her arrest and that the appellant became very angry; that she threatened Reid and said that she would get even with him for some wrong that he had done her. It would seem that Reid was apprehensive of leaving his young child alone when she evinced such feeling against him. He sought legal advice. He and his attorney related the facts to the Justice of the Peace. The complaint was signed and sworn to by Reid. Thereupon the Justice of the Peace issued the usual form of warrant for appellant's arrest.

All three of these defendants are charged with false imprisonment. The complaint is quite extensive and voluminous but the issues, presented to the trial court, were narrowed down before evidence was introduced by agreement of counsel so that anything in the complaint which did not relate to false imprisonment, alleged in the complaint, or which would not be competent to sustain the charge of false imprisonment would be mere surplusage. The parties consented that the court would confine the trial to the one issue of false imprisonment as set up in the complaint and to the damages arising therefrom, if any, both actual and exemplary.

We now consider the law relating to the dismissal of

the action against the three defendants, Reid, Ortman and Klinkel. It would seem that malicious prosecution and false imprisonment are frequently confused. The distinction between them is fundamental. In the case of malicious prosecution, as in abuse of process, valid process justifies restraint or imprisonment and the gist of the complaint of action is malicious or evil intent. A suit for false imprisonment, from the authorities we have examined, seems to be the proper action in which the aggrieved party is arrested without legal process or under a void process, and the authorities seem to hold that, where the process by which the arrest is made is regular on its face but is sued out maliciously and without proper cause, the remedy is an action for malicious prosecution. 22 Am. Jur. § 3, p. 356.

The issues having been narrowed down to only false imprisonment and there being legal process, malicious prosecution issues must not be considered even though the appellant has seen fit to charge and argue that the said three defendants did not act in good faith, having acted wrongfully, maliciously and unlawfully. This court in Just v. Martin Bros. Co., 37 S. D. 470, 159 N. W. 44, 45, in passing upon a complaint alleging the imprisonment of plaintiff under a lawful commitment although unlawful and maliciously caused to be issued, said: "The language used goes only to the motive which prompted the issuance of the commitment, not to the validity or invalidity of the commitment. King v. Johnston, 81 Wis. 578, 51 N. W. 1011. If the commitment was a valid one, the allegation that it was wrongfully and maliciously issued was unimportant in an action for false imprisonment, for if the imprisonment was lawful, it did not become unlawful because done with malicious intent (19 Cyc. 320, note 9, and cases cited), while if the imprisonment was unlawful, the motive might have a bearing upon the amount of damages. In discussing the alleged cause of action for malicious prosecution, we have hereinafter adverted to a number of causes for which commitments are issued in this state. We conceive it to be entirely possible that any one of such commitments might be issued because of the

evil motive of the complaining party, and still the facts might warrant its issue regardless of the motive. If the commitment were valid, there would be no cause of action for false imprisonment. So far as anything appears in the complaint in this case, the commitment was perfectly valid."

It will be observed that the "bad faith", expressed in the above quotation causing the commitment to be issued unlawfully and maliciously was unimportant in an action for false imprisonment and that it did not become unlawful because done with malicious intent, and while if the imprisonment was unlawful the motive might have a bearing upon the amount of damages. Therefore, in the instant case, where the commitment was lawful, the motive could have no bearing upon the amount of damages. In Krause v. Spiegel, 94 Cal. 370, 29 P. 707, 15 L. R. A. 707, 28 Am. St. Rep. 137, the court reviews a number of authorities and quotes a conclusion reached by an early authority that if a party makes a complaint before a justice which the justice conceives to amount to a felony and issues his warrant against the party complained against, when the facts do not amount to a felony, no action or malicious prosecution will lie against the party who made the complaint.

In Stubbs v. Abercrombie et al., 42 Cal. App. 170, 183 P. 458, the court quotes, with approval, from a New York decision, Nebenzahl v. Townsend, 10 Daly, N.Y., 232, 235, covering a complaint for false imprisonment and malicious prosecution and reached the conclusion that each cause of action was distinct from the other and that both could not exist upon the same state of facts, and stated more clearly that if the one lies upon the facts, the other does not. The California court then quoted a number of cases in support of that conclusion.

In Page v. Citizens' Banking Co., et al., 111 Ga. 73, 36 S. E. 418, 51 L. R. A. 463, 78 Am. St. Rep. 144, the court, passing upon similar facts as involved in the instant case where the warrant upon which the accused was arrested was neither defective nor void, held that where the warrant is regular and properly sued out and the prisoner had been

properly and legally arrested under it, that the imprisonment was not false, and that malicious prosecution was the only remedy. See cases cited.

"There is a well-marked distinction between an action for false imprisonment and an action for malicious prosecution. An action for false imprisonment may be maintained where the imprisonment is without legal authority. But, where there is a valid or apparently valid power to arrest, the remedy is by an action for malicious prosecution. The want of lawful authority is an essential element in an action for false imprisonment. Malice and want of probable cause are the essentials in an action for malicious prosecution. The petition shows that the plaintiff was not arrested without lawful authority. He was arrested under a warrant of arrest legally issued by the proper officer. The person who procured the warrant to be issued and thus caused the arrest is liable to an action for malicious prosecution if he acted with malice and without probable cause. But he is not liable for procuring the warrant to be issued and executed unless he acted with malice and without probable cause. 19 Cyc. 321, 7 Am. & Eng. Encyc. of Law, 664; Gordon v. West, 129 Ga. 532, 59 S. E. 232, 13 L. R. A. (N.S.) 549, and cases cited. In the case of Southern Railway Co. v. Shirley, 121 Ky. [863], 865, 90 S. W. 597, 28 Ky. Law Rep. 860 [12 Ann. Cas. 33], this distinction is pointed out. In that case Shirley was arrested without a warrant of arrest and without legal authority. His arrest was unlawful. In this case the plaintiff was arrested under a legal warrant and he was legally held in custody." Roberts v. Thomas, 135 Ky. 63, 121 S. W. 961, 962, 21 Ann. Cas. 456, 457.

See Haskins v. Ralston, 69 Mich. 63, 37 N. W. 45, 13 Am. St. Rep. 376, Tryon v. Pingree, 112 Mich. 338, 70 N. W. 905, 37 L. R. A. 222, 67 Am. St. Rep. 398.

"As we understand it, this is a suit for damages for malicious prosecution, although one of the parties to this appeal refers to it as a suit for false arrest and malicious prosecution. If we mistake not, there is a difference between the two. Technically, or rather correctly speaking,

a suit for false arrest or false imprisonment is the proper action where the aggrieved person is arrested without legal process; but, where the process on which the arrest was made is regular on its face, but was sued out maliciously and without probable cause, the remedy of the injured person is an action for malicious prosecution. The two actions, however, are closely akin, and sometimes a transaction may constitute both a false imprisonment and a malicious prosecution. 11 R. C. L. 790, 791." Coffman v. Shell Petroleum Corporation et al., 228 Mo. App. 727, 71 S. W.2d 97, 98.

See, also, Meints v. Huntington et al., 8 Cir., 276 F. 245, 19 A. L. R. 664, and annotations beginning at page 671 as to elements of action for false imprisonment.

Based upon the record and the foregoing authorities, the court is sustained in its directing verdicts for the three defendants, Reid, Ortman and Klinkel.

Appellant urges that the court erred in giving to the jury Instruction II. An examination of the court's Instruction II discloses that it narrates the appellant's claims that she demanded of the defendant Ryan that he take her before the Justice of the Peace who issued the warrant. Further in this Instruction II he states that the respondent Ryan insists that the plaintiff at no time demanded that he take her before the Justice of the Peace who issued the warrant. On the contrary she told him that she did not want a trial or to appear before the Justice of the Peace; that she consented and agreed together with and in company with her brothers that the defendant Ryan might discharge her from custody without taking her before the Justice of the Peace who issued the warrant. The court then stated the issues of fact which they would have to decide. The court continued with reviewing the claims of each of the parties. In closing Instruction II, the court stated that if appellant consented that she be discharged from custody without any hearing or trial and without the defendant Ryan taking her before the Justice of the Peace, then the appellant could not recover any damages in this action and cautioned the jury to consider this specific instruction and

the preceding instructions in connection with Instruction II. We believe the trial court has correctly stated the law deduced from the disputed facts in the case and no error was committed in the giving of this Instruction II. The instructions given by the trial court in this case seem to clearly cover all the matters to be considered by the jury, and we therefore do not believe that the court erred in refusing to give any of the requested instructions.

Much has been written upon the subject of false imprisonment. The court's instructions seem to be and are in harmony with the majority of court opinions and text-writers. In Singerman v. William J. Burns International Detective Agency, Inc., 219 App. Div. 291, 219 N. Y. S. 724, 726, the plaintiff was arrested for a misdemeanor. He begged to be allowed to go free. The citizen, who had arrested him, acquiesced on plaintiff's waiving any complaint he might have for the arrest and consequent detention. The court cites a number of cases and quotes from some of them. In one of the quoted cases, Joyce v. Parkhurst, 150 Mass. 243, 22 N. E. 899, it is stated that when the defendant was about to take the plaintiff before the district court to make complaint against him, the plaintiff asked him not to do so but to let him go and other language indicating that he did not want to be taken before the court. The court said, and we quote with approval: " '* * * Such a request shows the intention of the plaintiff to waive his rights, and fairly implies an understanding that he shall not hold the defendant responsible for granting the request, and would warrant the jury in finding that there was a release of damages by the plaintiff on account of the failure by the officer to take him before the court and make complaint'."

While we concede that in the above case the arrest was made by a citizen instead of an officer, as in the case before us, yet the legal reasoning employed must necessarily govern the facts before us, and we quote: "A person should not be permitted to escape arraignment before a magistrate by his appeal to the sympathy of a citizen making an arrest, and then be allowed to recover damages because he was not

brought before a magistrate and properly prosecuted for the misdemeanor he committed. In this situation, we do not believe it would be practical, just, or proper to hold, in the ordinary case where the citizen making the arrest had innocently acceded to entreaties to release the prisoner, that the waiver could not be relied upon, especially in view of the fact that the citizen might be guilty of a misdemeanor in not completing the arrest or arraignment." Caffrey v. Drugan, 144 Mass. 294, 11 N. E. 96; Bates v. Reynolds, 195 Mass. 549, 81 N. E. 260; Shea v. Sullivan et al., 261 Mass. 255, 158 N. E. 771; Mulberry v. Fuellhart et al., 203 Pa. 573, 53 A. 504, and Clark v. Tilton, 74 N. H. 330, 68 A. 335. See Richardson v. Dybedahl, 14 S. D. 126, 84 N. W. 486.

In Bates v. Reynolds, supra, the court in dealing with the question whether a release from confinement upon the ground that the incarcerated person requested it, the court said [195 Mass. 549, 81 N. E. 260]: "* * * But we are of opinion that from all the evidence the jury might reasonably have drawn the inference that there was such a request and understanding. The defendant testified that the plaintiff said he preferred to remain at the station overnight, and that he was accordingly kept there and sent home in a carriage the next morning. The jury well might have found from this and the other evidence that the plaintiff desired to be kept there during the night and released and sent home the next morning, that is, that what was done was practically done at his request. This would bring the case within the doctrine of Caffrey v. Drugan, 144 Mass. 294, 11 N. E. 96. In that case, as in this, there was no direct evidence of an agreement to make no claim for damages, * * *."

The record has been examined and it seems that there is sufficient evidence to sustain the verdict. The trial court passed upon the sufficiency of the evidence on the motion for new trial and, having concluded that there is sufficient evidence to sustain the verdict, we will abide by the result found by the triers of facts who were present, heard the testimony given, and observed the conduct and demeanor of the witnesses while giving the testimony. We have care-

fully examined the other contentions of the appellant as to the admission of testimony and find that the court did not err in its rulings in reference thereto. The record has been examined as to other errors complained of, and, upon consideration, we conclude that the record does not contain harmful or prejudicial errors warranting a reversal.

The order and judgment appealed from are affirmed.

ROBERTS, RUDOLPH, and SMITH, JJ., concur in the result.

POLLEY, P.J., not sitting.