## WEBSTER V. WHITE *et al.*

1. The location by the county surveyor of the section lines under Act 1890, Chap. 35, which makes the survey presumptively correct, only makes such location *prima facie* evidence against the landowners.

2. Township officers trespassing upon land in the attempt to locate a section line highway on a line other than its proper location are personally liable for the trespass.

3. That, in a suit to enjoin township officers from opening a highway, they are not sued in their official capacity, does not require a reversal of a decree granting such injunction.

4. A request by defendant for a trial by jury, made after plaintiff has closed his evidence—the parties having noted the case for trial by the court—comes too late.

5. In an action for trespass to land, a witness should not be allowed to give his opinion as to the amount of damages, the basis upon which it was made not being shown. CORSON, P. J., dissenting.

(Opinion filed April 18, 1896.)

Appeal from circuit court, Minnehaha county. Hon. JOS. W. JONES, Judge.

Action for injunction and for damages. Plaintiff had judgment, and defendants appeal. Modified and affirmed.

The facts are stated in the opinion.

*Hosmer H. Keith*, for appellant.

An injunction will not be granted to restrain a public officer in the performance of his official duties. Story Eq. Jurisp. 13th Ed. § 955*a*; Throop on Public Officers, § 842; 2 High on Injunctions §§ 1309, 1311; Appeal of Delaware County, 13 Atl. Rep. 62; Emmons v. Campbell, 22 Hun. 582. The location of the highway and of the section line was an issue of fact for a

jury. Smith v. Gardner, 12 Or. 221; 53 Am. Rep. 342; Comegys v. Carley, 27 Am. Dec. 356; Bushey v. South Mountain Co., 20 Atl. Rep. 549, 551; Cochran v. Smith, 26 N. Y. § 103; Jones v. Pashby, 29 N. W. 374, 377. An injunction will never be granted until the legal rights of the parties have been established. Atty. Genl. v. City of Patterson, 9 N. J. Eq. 624; Atty. Genl. v. Heisbon, 18 Id. 410; Muir v. Howell, 37 Id. 39; Lyerly v. Wheeler, 59 Am. Dec. 596; Morris v. Prudden, 20 N. J. Eq. 530, 539; Penn. Coal Co. v. President, etc., 36 N. Y. 91, 99; Smith v. Gardner, 53 Am. Rep. 342. Plaintiff cannot deprive defendant of his right to trial by jury upon the legal question by uniting with it matter of an equitable nature, or a prayer for equitable relief. Davis v. Morris, 36 N. Y. 569; Wheelock v. Lee, 74 N. Y. 495, 500; Bradley v. Aldrich, 40 N. Y. 504; 100 Am. Dec. 528, 533; Hudson v. Caryl, 44 N. Y. 553. Where the statute prescribes how a jury may be waived, it can be waived only in the manner prescribed by the statute. Shaw v. Kent, 11 Ind. 80; Baylis v. Ins. Co., 113 U. S. 316; 5 Sup. Ct. Rep. 494; Hodges v. Easton, 106 U. S. 408; 1 Sup. Ct. Rep. 307; Wheelock v. Lee, 74 N. Y. 495, 500.

*Davis, Lyon & Gates,* for respondents.

Although formerly courts of equity were reluctant to interfere to prevent trespass, at the present day the jurisdiction of courts of equity is freely exercised to restrain threatened trespass if it would cause irreparable damage or debar the just enjoyment of the property in future. 1 Spelling, Extr. Rel. §§ 337, 342, 346. An injunction is a proper remedy by a landowner to restrain a public officer from opening a highway through the plaintiff's premises where no legal highway has been opened. 1 Spelling Extr. Rel. §§ 609–616; Morgan v. Miller, 59 Ia. 480; Bolton v. McShane, 67 Ia. 207; Johnson v. City of Rochester, 13 Hun. 385. See also 1 Spelling Extr. Rel. §§ 295–355; Pairier v. Tetter, 20 Kans. 47; Olliphant v. Comrs., 18 Kans. 286–396; Anderson v. Comrs., 12 O. St. 635; Weigel v. Welsh, 45 Mo. 560; McPike v. West, 71 Mo. 199; Diamond

Match Co. v. Ontonagon, 40 N. W. 448; Preston v. Preston, 2 S. W. 501; Shafer v. Stull, 48 N. W. 882; 1 High on Inj. § 356 and 363; Vorick v. Mayor, 4 Johns. Chanc. 53; Manco v. Burrough of Chambersburg, 25 N. J. Eq. 168.

HANEY, J.    This action was brought to enjoin defendants from opening and maintaining a section-line highway through plaintiff's land, and to recover damages resulting from an attempt to do so.    The line between sections 25 and 26, Split Rock township, Minnehaha county, is the one in dispute.    The highway along what was claimed to be this section line had been worked and traveled for a number of years, when, in April, 1893, the township employed the county surveyor to survey its lines and erect landmarks, under Chap. 35, Laws 1890. In making such survey the county surveyor located the line about 18 rods west of the traveled highway, where it passes plaintiff's premises, and, as he contends, that many rods west of where it was originally located by the government surveyors.    An attempt by the township officers to open and work a road along the line as located by the new survey gave rise to this action.    It was tried by the court, resulting in a judgment for plaintiff, from which, and an order denying a motion for a new trial, defendants appealed.

Defendants contend that the survey made by the county surveyor was the corporate act of the township, and is binding upon all land owners until set aside in a direct proceeding brought against the township in its corporate name; that it cannot be questioned collaterally.    We are unable to view Chap. 35, Laws 1890, in any such light.    The act itself makes the survey only presumptively correct.    Prior to its passage the same presumption prevailed in favor of surveys made in the manner prescribed by the statute.    The only substantial effect—apparently, the only purpose—of the act was to authorize civil townships to furnish profitable employment to county surveyors at the expense of the townships.    So far as this case is concerned,

it may be conceded that the county surveyor's work was presumptively correct; and his report, having been received in evidence, cast upon plaintiff the burden of proving that the line as originally located was not where the county surveyor located it. This is all the effect the statute itself requires shall be given to the survey. Whether it is entitled to even this effect, as against land owners without notice of the survey, is doubtful, and not decided at this time.

It is claimed that defendants were performing their duty as public officers, and can neither be restrained, nor required to respond in damages. If the findings of the court are sustained by the evidence, they were not performing any official duty. It was their duty to maintain and work a highway along the section line as established by the original survey—not on a line 18 rods west thereof, and through the land of plaintiff. When they left the section line, they left the highway, and whatever they did beyond the limits of the highway was without authority and unlawful.

It is alleged and admitted that defendants Benedict, Lee and Munson are township supervisors; that defendant White is road overseer; and that each acted in an official capacity. It is contended that they and their successors in office cannot be enjoined, because the title of the action fails to show that they are sued in an official capacity. This is but a defect in form, which involves no substantial right, and, in any view, cannot be regarded as reversible error. Defendants, having exceeded their authority as township officers, might be treated as trespassers and enjoined as individuals. The decree is effectual to prevent them from acting in any capacity, and it is immaterial to them what effect it may hereafter have upon the corporation or others not parties to this action. The facts, as found by the court, clearly authorized the issuance of an injunction. 2 High Inj. § 702, and cases cited.

Defendants make the point that they were entitled to a trial by jury. Upon the issues made by the complaint and answer,

both parties noticed the cause for trial by the court.   Defendants did not request a jury, nor object to a trial by the court, until after the conclusion of plaintiff's evidence, when they asked the court to rule and decide in their favor upon several propositions; among them, "that defendants are entitled, under the constitution, to a trial by a jury on all questions of trespass, and such as the proof would warrant, given upon the trial of this action." If this was intended as a demand for a jury trial, it came too late.   Noting the case for trial by the court, and failing to ask for a jury, or object to the proceedings, until the plaintiff had completed his testimony in chief, were unequivocal acts, showing an intention to abandon the right of a trial by jury. Wheelock v. Lee, 74 N. Y. 495; Baird v. Mayor, etc., Id. 382.

The trial court found that the line run by the county surveyor between sections 25 and 26 does not correspond with the line of the United States survey, and the landmarks erected by the county surveyor were not set upon the corresponding section corners and quarter section corners established by the United States survey between said sections, but said new line and landmarks are located about 18 rods west of said United States survey, and upon plaintiff's said premises.   It is claimed that this finding is not sustained by the evidence, and numerous errors are assigned relative to the introduction and rejection of evidence.   A large number of witnesses were examined on behalf of both parties, among whom were some of the first settlers in the township.   As is usual in this class of cases, the evidence is conflicting.   It would serve no useful purpose to attempt a statement of it in this opinion.   After a careful examination of the entire record, we have reached the conclusion that, upon the competent evidence before it, the court was justified in finding as it did in respect to the true location of the line in dispute.   This court will not reverse the findings of a trial court unless there is a clear preponderance of the evidence against its decision.   Randall v. Burk Tp., 4 S. D. 337, 57 N. W. 4.

Plaintiff, as a witness in his own behalf, was asked this question: "What, in your judgment, is the actual damage to the east half of the northeast quarter of the land you own, caused by work that has been done by Mr. White and the other defendants, that you have described?" This was objected to as inadmissible under the complaint; not tending to prove any facts; as calling for a conclusion of the witness; and not the right measure of damages. The objection should have been sustained. His estimate was not limited by any rule. It is impossible to determine upon what basis it was made. As his answer appears to be the only evidence as to the amount of damages sustained, we think the court should have found only nominal damages. Regarding the question of damages as merely incidental to the principal controversy, we think the judgment should be modified by reducing the amount of damages from $25 to $1; and, so modified, it should be affirmed.

CORSON, P. J. (dissenting). I am unable to concur in the majority opinion of this court, and I shall only attempt a very brief statement of my reasons for dissenting.

I concede, that leaving out of view the official survey made by the county surveyor, and the government official field notes, there is no such preponderance in the evidence as to where the original mounds were placed as to authorize this court to reverse the judgment of the court below. But, in my judgment, the evidence as to the old mounds was so conflicting that the court should have decided the case in favor of the defendants, upon the official survey made by the county surveyor, which was shown to correspond with the original government field notes. It seems to me that the court below, and the majority opinion of this court, give too little effect to the official survey. Of what practical use are the government field notes, unless a controversy like the one before us can be settled by surveys made corresponding with them? The county official survey seems to have been made under the provisions of Chap. 35,

Laws 1890, Sec. 5 of which reads as follow: "All landmarks set under authority of the provisions of the preceding sections shall be presumptively deemed to be at the section and quarter section corners, as originally established by the United States survey, at which they respectively purport to be set." By Sec. 689, Comp. Laws, relating to surveys, it is provided, "his [the county surveyor's] surveys shall be held as presumtively correct." The manner in which such surveys shall be made is provided for by Sec. 694, Comp. Laws, which reads as follows: "In retracing lines or making any survey he shall take care to observe and follow the boundaries and monuments as run and marked by the original survey, but shall not give undue weight to partial and doubtful evidences or appearances of monuments the recognition of which shall require the presumption of marked errors in the original survey, and he shall note an exact description of such apparent monuments." The electors of Split Rock township, by a vote of 42 to 16, authorized this survey to be made. This survey of the township seems to have been made in a most thorough and conscientious manner by the deputy county surveyor, who seems to have carefully examined every point where it was claimed an old mound had been seen. The section line involved in the cases before us was re-surveyed in a most careful and painstaking manner by the county surveyor himself, who re-examined all the points at which old mounds were claimed to have existed; and he testified—and it is not disputed—that his survey, as made, corresponds with the original government field notes, in every respect. Can such a survey, so declared to be presumptively correct, be overcome by the mere preponderance of conflicting oral evidence as to the existence of mounds from 20 to 40 rods easterly of the line so established by the county surveyor? Or, in other words, should not the evidence to overcome such a survey be so clear and convincing that different minds could not reasonably draw different conclusions therefrom? While the rule is well settled that mounds established at the time of the original government

survey will control courses and distances given in the government field notes, still, in order to control the courses and distances as there given, the existence of such original mounds on the line claimed should be established by clear, unequivocal, and convincing evidence. When the evidence as to the location of such mounds or monuments is substantially conflicting, then it would seem to be the duty of the court to accept the official survey as conclusive. This rule seems to be approved in Pernam v. Wead, 6 Mass. 131. In that case Chief Justice PARSONS speaking for the court, says: "When the boundaries of land are fixed, known and unquestionable monuments, although neither courses nor distances nor the computed contents correspond, the monuments must govern. With respect to courses from errors in surveying instruments, variation of the needle, and other causes, different surveyors often disagree. The same observations apply to distances arising from the inaccuracies of measures, or of the party measuring, and computations are often erroneous. But fixed monuments remain. About them there is no dispute or uncertainty; and what may be uncertain must be governed by monuments, about which there is no dispute." It will be observed that the learned chief justice says: "When the boundaries of land are fixed, known, and unquestionable monuments." Again he says: "But fixed monuments remain. About them there is no dispute or uncertainty; and what may be uncertain must be governed by monuments, about which there is no dispute." Such, also, seems to be the view of the supreme court of Iowa in Yocum v. Haskins, 81 Iowa 436, 46 N. W. 1065, in which that court quotes, and apparently adopts, the language of Mr. Justice PARSONS in the case quoted from. That court says: "When the boundary is not fixed and known, but is in dispute, courses, distances and contents may be considered, in fixing and knowing the true boundary."

The rule that fixed monuments will govern and control courses and distances is based upon the theory that such monu-

ments are fixed, certain and undisputed. It is because of the undisputed character and position of such monuments that they are allowed to control courses and distances given in the field notes, which, as Chief Justice PARSONS says, may, from various causes, be inaccurate; but when the location of the monuments themselves is in dispute, and is not certain, fixed and well known, the government field notes, and surveys made in persuance of them, should prevail. In my opinion, such a survey, being both official and a record, and made from the official government record, should prevail as against any but the most conclusive, satisfactory, and substantially undisputed oral evidence as to the mounds upon the ground. If such is not the rule, then what rule of law is there by which to determine the boundaries of government lands, and especially for determining the section lines for the purpose of public highways? If the section lines are to be determined in each case by the court or jury, upon a mere preponderance of the oral evidence as to where the original government mounds were placed, as many different section lines might be established as there are sections or quarter sections along the line. In one case the jury might find, from the weight of the oral evidence, that the line claimed by the plaintiff was the line on which the mounds were established. In the next case the court or jury might find, from a preponderance of the oral evidence, that the surveyed line 16 to 40 rods further to the west was the line upon which the mounds were in fact placed. Where, then, are the section-line roads to run? Where there is such conflict in the evidence as to where the original mounds were actually placed by the government surveyor, is there no legal method of determining the question? It seems to me that there is, and that is the official survey made by the county surveyor in accordance with the government field notes. Here, in the absence of fixed and undisputed monuments, we have the official field notes, made at the time of the original survey, from which any competent surveyor can locate the points at which the mounds should

have been placed, and where, presumptively, they were placed. These field notes should only yield to fixed and undisputed monuments, and never to doubtful and disputed monuments. The doctrine I contend for is no new doctrine, but is only the application of a very old doctrine to the class of cases where the official acts and records of public officers are sought to be overcome by oral evidence. To illustrate: When one who makes an absolute deed claims that it was given and intended as a mortage, he may have the deed so declared, if he can show, by clear, satisfactory, and practically conclusive evidence, that such was the fact. But no mere preponderance of the evidence will answer. If there is a substantial conflict in the evidence, the absolute character of the deed will be sustained.

Mr. Pomeroy, in his work on Equity Jurisprudence, says: "The presumption, of course, arises, that the instrument is what it purports on its face to be—an absolute convey-ance of the land. To overcome this presumption, and to estab-lish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal, and convincing, for other-wise the natural presumption will prevail." 3 Pom. Eq. Jur. § 1196. See, also, cases cited. The same rule applies to cases for the reformation of contracts, or other instruments in writ-ing. The presumption arising, that such contracts contain the real agreement of the parties, is so strong that it can only be overcome by the same clear, unequivocal, and convincing evi-dence as is required to show that an absolute deed is a mort-gage. 2 Pom. Eq. Jur. § 859. These cases are referred to only to show that there are a class of cases where rights are given, but yet they must be established by more than a mere pre-ponderance of the evidence. When it is sought to establish a section line, therefore, which does not correspond with the gov-ernment field notes, or the official survey of the county sur-veyor, and which, in effect, contradicts a public record and an official survey, certainly something more should be required than a mere preponderance of the evidence. Evidence as

.clear, unequivocal, and convincing as is required to show an absolute deed to be a mortgage should, at least, be insisted upon, or the presumption awarded to the official survey and the record of the field notes should prevail.

The defendants justified their entrance upon the land in controversy under and by virtue of the official survey of the county surveyor; which, as we have seen, is declared to be presumptively correct.    To permit the parties to overcome this presumption by a mere preponderance—conceding there was such a preponderance—of conflicting oral evidence of the existence of earth mounds, claimed to have been placed upon an entirely different line from that shown by the field notes of the government surveyor, but which no witness testifies were so placed by such surveyor, seems to me to be calculated to render very uncertain the boundaries to government land, and holds out to parties too great inducements to swerve from the truth, in their recollection of these old monuments.   It may be observed that, in the cases before us, many of the witnesses as to the line claimed by the plaintiffs, if the same can be maintained, secure from 10 to 40 acres of land each, in addition to the land patented to them by the government, while the number of acres of their neighbors are correspondingly that much less than the patent calls for.   While undisputed and well-established government mounds, placed by the government surveyor, should be respected, doubtful and uncertain evidence of the existence of such mounds, many years ago, along lines that do not correspond with the government field notes, and which, in effect, impute to the government surveyor great negligence, want of integrity, or ignorance, should be given but little weight, as against the official field notes and survey.   The line contended for by the plaintiffs in the cases before us is similar to the one contended for in Hanson v. Red Rock Tp., 4 S. D. 358, · 57 N. W. 11, and my views upon the subject of these earth mounds as monuments are so fully stated in the opinion in that case that a repetition of them here is unnecessary.   My conclusion

is that the court below should have found in favor of the defendants, and that its judgment in the three cases submitted together should be reversed, and a new trial granted.