NEBRASKA ELECTRIC GENERATION & TRANSMISSION COOP., INC., Appellant v. MARKUS et ux, Respondents

(241 N.W.2d 142)

(File No. 11529. Opinion filed March 25, 1976)

**J. W. Grieves**, Winner, for plaintiff and appellant.

**Johnson, Johnson & Eklund**, Gregory, for defendants and respondents.

COLER, Justice.

Nebraska Electric Generation & Transmission Cooperative, Inc., in this condemnation proceeding, joined Lawrence Markus and Velma Markus, husband and wife, in its original petition. Taken by the proceeding was a 100 ft. wide easement for the construction of a transmission line that will diagonally traverse three quarters of land amounting to an actual taking of 13.31

acres for the right-of-way upon which would be placed seven 2-pole structures for a 115 KV transmission line. The jury awarded the sum of $35,000 for all damages, including consequential damages to the remainder, and the condemnor appeals. We affirm.

Appellant, by timely objections, in its motion for new trial, assignments of error and on its brief, has preserved the following issues for the purposes of this appeal: (1) failure of the trial court to impanel a new jury to hear this case; (2) misconduct of jurors in considering evidence of previous cases tried; (3) impropriety of the instruction on the unit rule; (4) excessive damages appearing to have been given under the influence of passion or prejudice and on the grounds of insufficiency of the evidence to sustain the verdict, and (5) the failure of the trial court to restrict evidence of planned use and permitting certain testimony to be admitted without adequate foundation.

This case is the third of four condemnation cases tried in Tripp County involving condemnation of Todd County land by the appellant. See Nebraska Electric Generation & Transmission Cooperative, Inc. v. Tinant, file No. 11500, 1976, 90 S.D. 284, 241 N.W.2d 134, Nebraska Electric Generation & Transmission Cooperative, Inc. v. Cady, 1976, 90 S.D. 233, 241 N.W.2d 139, and Nebraska Electric Generation & Transmission Cooperative, Inc. v. Walkling, file No. 11528, 1976, 90 S.D. 253, 241 N.W.2d 150. Prior to the commencement of the trial on April 22, 1974, by letter dated April 11, 1974, counsel for the appellant requested the impaneling of eighteen new jurors pursuant to SDCL 21-35-12. Appellant further requested that, in the event of denial of a new panel under SDCL 21-35-12, the trial court consider its motion to challenge the panel called for the regular term of court since the jurors from that panel who had served in the two previous trials necessarily had "pre-conceived notions and attitudes about any subsequent case" and, further that the present jury panel did not conform to SDCL 16-13-1, 16-13-10, and 16-13-10.1. The trial court deferred hearing of and ruling on the motions of the appellant until after the jury was sworn and evidence had been introduced. At the noon recess of the first day of trial the trial court denied the motion made pursuant to SDCL

21-35-12 on the basis that the regular term of court for Tripp County was still in session, therefore no special term was required. The court further denied appellant's challenge to the jury panel on the ground that no Todd County residents were included on the panel pursuant to SDCL 16-13-1, 16-13-10, and 16-13-10.1.[1]

The procedure for challenge to a jury panel in civil cases is governed by statutes relating to criminal proceedings. SDCL 15-14-4. As it relates to this case, a challenge to the panel can only be grounded on material departures from the forms prescribed by law, SDCL 23-43-11, and the challenge must specify "plainly and distinctly the facts constituting the ground of challenge." SDCL 23-43-12. We hold that the challenge was not properly grounded. Had the appellant claimed that a special term of court for the unorganized county of Todd was required by SDCL 16-5-19,[2] under the then existing provisions of SDCL 16-5-11, in

1. In an affidavit filed on July 26, 1974, the Tripp County clerk of courts stated in part: "That in securing the jury panel for the jury that heard the Markus case there was an intentional omission of any residents of Todd County, South Dakota, in the compilation of the jury panel." We presume that the trial court was not unmindful of the procedure used to impanel a jury for Tripp County by reason of the statement of the trial judge in denying the motion "for the reason that Todd County has been attached to Tripp County for the purpose of Court activity and for the further reason that the Court does not have jurisdiction over the majority of the residents of Todd County and could not therefore compel them to serve as jurors."

2. Contrary to appellant's position as ruled upon by the trial court, jurisdiction, as well as venue, is fixed by law and not by court rule designating terms of court or by statutes relating to jury selection. Proceedings in condemnation must be brought in the county in which the property taken or damaged is situated. SDCL 21-35-1. The land taken or damaged in this case was all situated in Todd County which, though unorganized, is a separate entity the boundaries of which may not be changed without a vote of the people. S.D.Const. Art. IX, § 1, SDCL 7-2-1, 7-2-6, 7-17-1, 7-17-2.

 Neither the caption of the pleadings required by SDCL 15-15-6 to state the name of both the unorganized county and the organized county to which it is attached, nor the fixing of the regular term of court of the organized county of Tripp, Supreme Court Rule 75-1, § 6 (SDCL 16-5-7) as amended by Rule 76-2, should be considered as repealing by implication the intent expressed by the legislature in SDCL 16-5-21 that qualified electors of an unorganized county shall be selected for the infrequent trials required for causes of action properly venued therein, though triable in the administrative county pursuant to SDCL 16-5-22. We do not read the language of SDCL 16-13-10.1 wherein it makes references to jury selection from "a fair cross-section of the community in the municipality, district or county where the court convenes", enacted as it was prior to judicial reorganization, as controlling venue or abolishing county lines, which a statute cannot do. We conclude that it would not be proper to include residents of the unorganized county of Todd in a jury panel for the organized county of Tripp any more than it is proper for Tripp County jurors to hear and determine actions properly triable in Todd County.

adequate time for the respondents to have applied for a change of venue pursuant to SDCL 15-5-11, we might be persuaded that error occurred. However, that ground was not alleged and we are not persuaded that the appellant has met its burden of proof that prejudice resulted, State v. Smith, 1930, 57 S.D. 292, 232 N.W. 26, nor that the irregularity, if such can be claimed on this record, deprived appellant of a substantial right. SDCL 16-13-31.

■ In denying appellant's motion to impanel a new jury because most members of the panel had served in the two previous cases tried, the trial court quite properly stated that it would "excuse any jurors demonstrating implied bias for or against any of the parties". The transcript contains none of the voir dire examination and there is no claim made that the jurors selected evidenced any bias or prejudice. Appellant filed an affidavit of a juror to the effect that she and other members of the jury considered the similarity of the evidence and the verdicts in the two previous cases tried and made comparisons in arriving at a verdict in this case.

■ We hold that the affidavit was inadmissible for the purpose offered. It is the "settled law in this state that the testimony of jurors is inadmissible in support of a motion to set aside a verdict on the ground of mistake, irregularity, or misconduct of the jury, or some one or more of them, except in the cases expressly authorized by the legislature." Edward Thompson Co. v. Gunderson, 1897, 10 S.D. 42, 71 N.W. 764; Kredit v. Ryan, 1942, 68 S.D. 274, 1 N.W.2d 813. As stated by this court in Kredit v. Ryan, supra,

"Our legislature has not, up to the present moment, expressly authorized the receiving of jurors' affidavits by courts except SDC 33.1605(2) (now SDCL 15-6-59(a)(2)), and as there is nothing in the facts in the case before us that could possibly be construed to be governed by subdivision 2, we must adhere to our former holdings in an unbroken line of authorities that affidavits of jurors may not be used to impeach and overthrow their verdicts. * * * In this State the affidavits of jurymen cannot be received to impeach or defeat their verdict. The pro-

hibition extends beyond cases of willful misconduct on the part of jurors, and to every case in which the affidavits are attempted to be used as ground for setting aside a verdict because of a misunderstanding of its effect by some or all of the jurors who united in its rendition. The only exceptions to this rule are those in which the Legislature has by express enactment authorized such attack upon the verdict by those who rendered it, and it is not pretended that the present case is within any such exception." Kredit v. Ryan, supra, at 279, 1 N.W.2d at 815.

During the course of the trial it became apparent that there were some parcels of land involved in the total ranch unit acreage of 2059 acres which were owned by Lawrence Markus, individually, and others which he held in joint tenancy with his wife Velma. After a thorough review of a 244-page transcript of the trial which, contrary to SDCL 15-29-5, the court reporter failed to index, and from examination of the nonindexed exhibits, we find that Lawrence Markus owned in fee all of Section 4 of Township 36 North, of Range 30, West of the Sixth P.M., consisting of 459.40 acres, the south two quarters of which were affected by the taking and also the North Half of Section 10, Township 36 North, of Range 30 West, containing 320 acres, with the Northwest Quarter thereof being the third quarter affected by the transmission line. Section 4 of Township 36 North, Range 30 West, is contiguous to the North Half of Section 10 constituting the home place, and Lawrence Markus had acquired another 160 acres to the north, being the Southeast Quarter of Section 3 and two non-contiguous 160-acre tracts some one-and-a-half and three miles distant, being the Northeast Quarter of Section 25 and the Southwest Quarter of Section 13, both in Township 37 North, of Range 30 West. Lawrence and Velma Markus owned in joint tenancy a full quarter of contiguous land described as the Northwest Quarter of Section 11, Township 36 North, Range 30 West. They also had acquired a joint interest under contract for deed, which was not of record, in the East Half of Section 36, Township 37 North, of Range 30 West, the Northeast Quarter and the Southwest Quarter of Section 31, Township 37 North, of Range 29 West. State Highway Commission v. Miller, 1968, 83 S.D. 124, 155

N.W.2d 780. Appellant has not challenged the claimed owner-ships nor the contiguity of the tracts, apparently on the basis that the lands were rendered contiguous by lease of Indian lands which were interspersed with lands of the respondents. These leases involving some 2588 acres were considered as being ter-minable and were not claimed as part of the unit.

 As in Nebraska Electric Generation & Transmission Cooperative, Inc. v. Cady, and Nebraska Electric Generation & Transmission Cooperative, Inc. v. Tinant, both supra, the ap-pellant claims that the rule of this court announced in Basin Elec-tric Power Cooperative, Inc. v. Cutler, 1974, 88 S.D. 214, 217 N.W.2d 798, is controlling and that Instruction #7[3] was erroneous-ly given. The evidence in this case so closely parallels the evidence in both Tinant and Cady as to the irrigation potential and the need for irrigation as to render it unmeaningful to recite that evidence. The evidence supported the giving of the instruc-tion and, no instruction having been offered by the appellant, it became the law of the case. SDCL 15-6-51(a). Viewing the evidence in the light most favorable to the prevailing party, we determine appellant's claims of excessive damages appearing to be the result of passion or prejudice and the insufficiency of the evidence to sustain the verdict to be without merit. SDCL 15-26-19 and annotations thereunder.

The more troublesome challenge to the instruction is that ap-pellant objected thereto "on the grounds there is not unity of ownership of that number of acres" and cites in its brief portions of the statement appearing at 27 Am.Jr.2d, Eminent Domain, § 320, stating the strict rule as to the requirement of unity of ownership as follows:

---

3. It is established that the land being taken from these defendants by the plain-tiff is a portion and a part of a larger tract of land belonging to these defendants, and consisting of 2059 acres more or less.

When a portion of a tract of land is taken under condemnation proceedings, as here, just compensation due the landowner is that amount which is equal to the difference between the fair market value of the entire property immediately before the taking, and the fair market value of that part remaining immediately after the taking. In determining the amount of just compensation which you will award to the landowners in this case, you will consider the value of the property taken, and also the depreciation in value, if any you shall find, of the part re-maining after the taking.

"It is the general rule that in order to allow severance damages where a portion of a parcel or parcels of land claimed as a single unit is taken in eminent domain, there must be unity of ownership between the part taken and the remainder. * * * As a general rule, tracts held by different titles vested in different persons cannot be considered as a whole where it is claimed that one is incidentally injured by the taking of the other for a public use." 27 Am.Jur.2d at 143-144.

Respondents on the other hand have commended for our review 29A C.J.S. Eminent Domain § 140. This court quoted therefrom in Hurley v. State, 1966, 82 S.D. 156, 143 N.W.2d 722, as follows:

"There is no single rule or principle established for determining the unity of lands for the purpose of awarding damages in eminent domain cases. While, generally, there must be unity of title, contiguity of use, and unity of use, under certain circumstances, the presence of all these unities is not essential." Hurley v. State, supra, at 164, 143 N.W.2d at 727.

The respondents would ask this court to adopt a liberal view, as also expressed in 29A C.J.S. Eminent Domain § 140, to the effect that "unity of use is given greatest emphasis, and has been called the controlling and determining factor." Neither of the parties has recognized that by virtue of this court's holding in State Highway Commission v. Fortune, 1958, 77 S.D. 302, 91 N.W.2d 675 citing 6 A.L.R.2d 1197-1237; City of Menlo Park v. Artino, 151 Cal. App.2d 261, 311 P.2d 135, 136; and Duggan v. State, 1932, 214 Iowa 230, 242 N.W. 98, 99, editorial writers have squarely placed South Dakota in that category of states adhering to the strict rule of unity of ownership. See 4A Nichols on The Law of Eminent Domain, § 14.31[2], 95 A.L.R.2d 891 n., 896 n.

This court also recognizes that the constitutional provision of this state, Article VI, § 13, has been construed as being somewhat unique, Searle v. Lead, 1897, 10 S.D. 312, 73 N.W. 101, 39 L.R.A. 345; Chicago, M. & St. P. Ry. Co. v. Brink, 1903, 16 S.D.

644, 94 N.W. 422, though it is less so at the present time, considering later amendments to our constitution. Further, we observe that both the constitutional provisions of this state and the requirement of SDCL 21-35-18 that a jury determination of "compensation to be paid for each distinct lot or parcel of land or property taken or damaged" is unlike the statutes and rules of those states upon whose decisions the court relied in State Highway Commission v. Fortune, supra. See Cal.Const. Art. I, § 14; Cal.C.Civ.Proc. § 1248, and Iowa Const. Art. I, § 18, I.C.A. § 489.13.

We have not given emphasis to any one of three elements necessary for an award of consequential damages in consideration of the purposes to be served by both our constitutional and statutory provisions and the need to place meaningful restrictions on the amount of land that may be stretched beyond reason by joining parties having no common interest.

The harshness of the rule, if applied strictly in cases where husband and wife jointly own land which is part of a farm or ranch unit but itself is not touched by the easement which affects directly only land owned by one in fee, is shown by the holding of the Kansas Court in Hogue v. Kansas Power & Light Co., 1973, 212 Kan. 339, 510 P.2d 1308. The Kansas Court, on a factual situation not unlike that in this case, denied consequential damages to a 65-acre tract jointly owned by a husband and wife which was a tract included within the larger tract owned by the husband, and stated, after relating rule pronounced in Duggan v. State (Iowa), supra:

> "Nor are we oblivious of the charge that strict application of the general rule may occasionally result in what seems to be harsh consequences. Nonetheless, we prefer to adhere to the general rule, believing it will avoid many of the perplexities and complications which are forceable [sic] should we adopt a contrary position. Mr. and Mrs. Hogue may not have realized all the implications of joint tenancy ownership when they planned their estate, we assume to their mutual advantage, but the thread of countervailing factors runs deeply through the stream of human experience, and expected

benefits may often be offset, in part at least, by disadvantages." 510 P.2d at 1312.

We do not agree that such harsh consequences should befall a husband and wife, who, to keep a family farm together and in connection with estate planning, whether or not wisely instructed in tax or other consequences, choose joint tenancy ownership of a part but not all of their real estate holdings.

■ We are impressed with the apparent balance reached by the Supreme Court of North Dakota which has a constitutional provision of like origin to our own, North Dakota Constitution Article I, § 14, but whose statute, N.D.C.C. 32-15-22 patterned after Cal.C.Civ.Proc., § 1248 in part, unlike SDCL 21-35-18, permits the jury to determine separately the item of consequential damages contrary to the holding of our court that, by reason of words of limitation in SDCL 21-35-18, requires a lump sum award. City of Huron v. Jelgerhuis, 1959, 77 S.D. 600, 97 N.W.2d 314. The North Dakota Court has recognized that there are circumstances where the husband and wife, having differing interests in contiguous lands, may, by direct evidence of contractual relationships or long-standing practices, show a farm or ranch to be operated by members of a family in such a manner as to meet all tests of the unit rule of consequential damages thus making it permissible to grant an award based upon the unit as a whole. O'Connell v. Hjelle, 1966, N.D., 143 N.W.2d 251; Sauvageau v. Hjelle, 1973, N.D., 213 N.W.2d 381. Although this would depart from our quotation with approval from the decision of the Iowa Court, Duggan v. State, supra, the facts before the court in State Highway Commission v. Fortune, supra, in which the father and son held the land not in common or jointly, but in their individual names, should not control where there is sufficient evidence to show that the unity of use, coupled with the factors of contiguity of use and unity of title render varying interest in fee and in equity inseparable for the purposes of consequential damages.

■ While reluctant to abrogate entirely the strict rule adopted in State Highway Commission v. Fortune, supra, we hold that to the extent that husband and wife are owners of property separately and in joint tenancy, unity of use must be given

greater relative weight than unity of ownership under the circumstances of this case. Though there is nothing in the record showing present or future right to the land in anyone other than the respondents, Lawrence Markus and his son John have run the unit together as a cow-calf operation, running on the average 250 cows and a like number of yearlings. The son, a veteran and married, with one child, had been attending courses in irrigation, and Lawrence, who was 66 years of age, testified as to his intention to ultimately turn over the farming entirely to John. The utilization of the various tracts of land for pasturage clearly establishes the unity of use, though a more complete record could have been made had appellant earlier challenged the unity of ownership. We hold that under the circumstances of this case no error occurred in giving of the instruction on consequential damages.

Appellant has challenged the qualifications of respondents' witness, Charles Shaykett, who was established to be qualified as an expert real estate appraiser to give testimony relative to the market value of irrigable land, as he was not also an expert on irrigation. Both witness Shaykett and appellant's expert, Robert T. Carr, had appraised the property and based their valuations on the market data approach on the full 2059 acres. Neither of these witnesses had discovered any comparable sales of irrigation land or established irrigable land with which to compare the Markus property. Both experts agreed that the highest and best use of the land was as a diversified cattle ranch and each recognized the irrigation potential as affecting its continued use as such with leased lands becoming less available. Although the comparable sales used by both experts revealed a spread from $88.95 to $114 per acre, the valuation of the unit by them on the basis of irrigation potential was at material variance. Shaykett, over objection, valued the unit at $150 per acre and Mr. Carr at $130 per acre. Shaykett estimated the damages at $43,000 while Carr estimated damages to the same unit at $2800.

This court has long recognized that in order for a witness to give an estimate of damages there must be some basis shown for his determination thereof. Webster v. White, 1896, 8 S.D. 479, 66 N.W. 1145. The trial court, under the pronouncements of this court in State Highway Commission v.

Bloom, 1958, 77 S.D. 452, 93 N.W.2d 572, and State Highway Commission v. Hayes Estate, 1966, 82 S.D. 27, 140 N.W.2d 680, is given great latitude in the reception of evidence proving value of property in condemnation cases. An expert need not, and indeed cannot, be an expert in all things.

> "Testimony of an expert can be considered though he did not base his opinion entirely on comparable transactions. The supporting data testified to by the opinion witness must be relevant and competent although the use of hearsay, in and of itself, is not sufficient to condemn the competency of the opinion, especially where the witness shows that his own knowledge and experience require agreement with such hearsay evidence." 5 Nichols on The Law of Eminent Domain, 3d Ed. § 18.42[1].

Witness Shaykett was thoroughly cross-examined for impeachment purposes and the appellant's witnesses gave ample evidence to controvert his opinion. We find his opinion was admissible as based upon relevant and competent evidence. As stated by this court in Gleckler et al. v. Slavens et al., 1894, 5 S.D. 364, 59 N.W. 323:

> " 'It is not required that an expert witness stand at the head of his class to make his evidence admissible. His preliminary examination must show such knowledge of the subject as will enable him to speak with intelligence. The jury will determine the value of his opinion from the knowledge' which he shows himself to possess.' " Gleckler v. Slavens, 5 S.D. at 384, 59 N.W. at 329. See also Johnson v. Gilmore, 6 S.D. 276, 60 N.W. 1070, and Frye v. Ferguson, 6 S.D. 392, 61 N.W. 161.

Appellant also claims that the trial court improperly allowed John Markus, the son of the respondents, to testify as to damages to the land. There was no showing that the witness was either an expert or a landowner such as to render his testimony of damages of $100,000 admissible. While improperly admitted and not merely cumulative, Alberts v. Mutual Service Casualty

Insurance Co., 1963, 80 S.D. 303, 123 N.W.2d 96, we hold, on this record, that the testimony so lacked credibility that it was unlikely that it was given any credence by the jury to the prejudice of the appellant. Thus a new trial is not warranted. Schoenrock v. City of Sisseton, 78 S.D. 419, 103 N.W.2d 649.

Judgment affirmed.

DUNN, C. J. and WINANS and WOLLMAN, JJ., concur.