241 N.W.2d 150 (1976)
NEBRASKA ELECTRIC GENERATION AND TRANSMISSION COOPERATIVE, INC., Plaintiff and Appellant,
v.
William WALKLING and Sarah Walkling, Defendants and Respondents.
No. 11528.
Supreme Court of South Dakota.
March 25, 1976.
*152 J. W. Grieves, Winner, for plaintiff and appellant.
Johnson, Johnson & Eklund, Gregory, for defendants and respondents.
COLER, Justice.
Nebraska Electric Generation & Transmission Cooperative, Inc., commenced this action in condemnation against William Walkling and Sarah Walkling, husband and wife, for a 100 ft. wide easement for the construction of a 115 KV transmission line. The line, when constructed, would diagonally cross seven separate quarters of land owned by William Walkling, amounting to an actual taking of 28.89 acres of land and there would be placed on the easement fifteen 2-pole "H" frame tangent structures and one 3-pole angle structure with four associated guides and anchors. From a verdict and judgment in the sum of $57,000, Nebraska Electric has appealed. We affirm.
Appellant's motion for new trial set forth, as one of the grounds, excessive damages appearing to have been given under the influence of passion or prejudice. This point we have previously discussed in Nebraska Electric Generation & Transmission Cooperative, Inc. v. Tinant, 1976, S.D., 241 N.W.2d 134, and also in Nebraska Electric Generation & Transmission Cooperative, Inc. v. Cady, 1976, S.D., 241 N.W.2d 139, and Nebraska Electric Generation & Transmission Cooperative, Inc. v. Markus, 1976, S.D., 241 N.W.2d 142. The record in this case, as in the cases previously cited, leads us to conclude, as in the other cases, that appellant has not met its burden of proof in showing passion or prejudice.
The motion for new trial otherwise questions (1) the admission of evidence as to the planned use of portions of the property for irrigation, (2) the sufficiency of the evidence as to the necessity for the utilization of center pivot irrigation systems over other available systems, and (3) the admission of certain testimony as lacking foundation.
Considered in the light of the motion presented to the trial court, our scope of review has been stated most recently in State Highway Commission v. Miller, 1968, 83 S.D. 124, 155 N.W.2d 780, as follows:
"The application for a new trial was addressed to the sound judicial discretion of the trial court and its ruling will not be disturbed in the absence of a showing of abuse of that discretion. Jensen v. Miller, 80 S.D. 384, 124 N.W.2d 394. It is reviewed in the same manner and under the same rules in a condemnation proceeding as in other cases generally. State Highway Commission v. Madsen, 80 S.D. 120, 119 N.W.2d 924."
Upon thorough examination of the record we find no abuse of discretion by the trial court.
Appellant's claims of error as to the admission of evidence as to planned use and sufficiency of the evidence are so necessarily related to the manner in which the case was tried and submitted to the jury as to make it desirable to state some of the procedural aspects in this opinion.
This was the fourth in a series of cases tried in Tripp County, South Dakota, for condemnation of land in the adjoining unorganized county of Todd. The jury was selected from a panel distinct from a panel from which jurors were selected in the cases previously considered by this court, i. e., Nebraska Electric v. Tinant, supra; Nebraska *153 Electric v. Cady, supra; and Nebraska Electric v. Markus, supra. The trial of this action commenced five days after the decision in Basin Electric Power Cooperative, Inc. v. Cutler, 1974, S.D., 217 N.W.2d 798, was handed down by this court.
Prior to the jury being sworn, appellant moved that respondents "be restricted in this evidence to showing damage to the 160-acre tract described in quarter section descriptions, across which the transmission line will run and that they not be permitted to introduce any evidence as to any possible damages as to any other property and the ranch owned by the defendants in line with the Cutler * * *." The trial court did not immediately rule on that motion but took it under advisement "principally to permit counsel for the defense to make offers of proof to show that there is damage to the land other than the 160 acres involved in the transmission line." The trial court then admonished counsel to refer to no damage before the jury other than the damage to each 160-acre tract upon which the transmission line was to run until the court had further ruled on the motions.
The ruling on the motions to restrict the evidence was not made, however, until after appellant's witness, Virgil Schaefer, the transmission engineer of the Nebraska Public Power District, consultant to appellant, had by his testimony and exhibits admitted through him established the real property description and taking required for the easement. Thereafter, respondents' witness, Charles Shaykett, was permitted to testify on the basis of expert qualifications in both real estate appraisal and irrigation. No objection was interposed to Mr. Shaykett's testimony in which he identified the transmission line as it passed through the "unit" and that "[t]he ranch is made up of an operating unit of thirty-eight hundred forty acres of deeded ground, plus approximately three sections of leased ground lying in this general area and some ground by the buildings." He further testified, without objection, as to the location and interrelation between the home headquarters and the unit operated therefrom for both haying and grazing purposes. Thus, by word and picture, the complete ranch operation was outlined to the jury.
In spite of the trial court's early admonition to restrict that testimony, questions to and answers by Mr. Shaykett evidencing his total disagreement with the 160-acre unit rule in Basin Electric v. Cutler, supra, were allowed to stand notwithstanding appellant's motion to strike. Thereafter, witness Shaykett, as foundation for his appraisal on the market data approach, testified at length as to the comparable sales on family-sized units and it was not until respondents' counsel asked Shaykett, "As an appraiser, what is the effect upon other property on the ranch of Mr. Walkling, of losing available irrigable acres in one of these quarters?" that counsel for appellant objected to the question as not being within the scope of the trial. That objection, which was sustained, was toward the end of the day's testimony and the jury was excused.
Following a discussion of Basin Electric v. Cutler, supra, by the trial court with counsel, counsel for respondents through witness Shaykett made an offer of proof essentially covering the same subject matter previously admitted as to unity of use of the ranch unit. The offer of proof was refused on the basis that the Cutler case foreclosed consideration of anything other than 160 acres in a unit. Appellant made no objection to the instructions[1] given in *154 line with Basin Electric v. Cutler, supra, or the form of verdict proposed.[2]
Instructions given without objection on the part of appellant become the law of the case. SDCL 15-6-51. Although respondents objected to the proposed instructions which limited consideration to each of the quarter sections crossed by the transmission line, they did not cross appeal. We do not, under the circumstances, deem the instruction given as prejudicial to the appellant. The evidence before the jury in this case supported the treating of the entire tract as one parcel for the purposes of *155 SDCL 21-35-18, yet appellant had the benefit of the instruction given and the verdict returned on the 160-acre unit rule.
Appellant's argument relating to the error in admitting evidence of planned use is based upon the denial by the trial court of its motion to restrict testimony as to "planned use of the property as opposed to the probable and highest and best use of the property" and as to availability of labor as to any specific type of irrigation equipment. Although the trial was delayed to accommodate the drilling of test holes on respondents' property for the purpose of establishing irrigation potential and neither soil tests nor water rights were yet available, the appellant seems not to challenge irrigability of the land in question. The highest and best use of the land as a ranch unit of 3840 acres, plus three sections of leased Indian lands, was established as being for a cow-calf operation with 140 head of brood cows, with the balance of the land as range for 750 yearlings pastured for others during a five-month period. Respondent, who was 65 years of age, had over a period of years, reduced cultivated acreage from a high of 1000 acres down to a mere 50 acres. The testimony of William Walkling indicated that he had not seriously considered irrigation until the condemnation action was commenced and, indeed, did not himself contemplate farming if the land was irrigated, but would lease out the land. There was, however, sufficient evidence for the jury to have found, given the facts of irrigation in the neighborhood brought about by rising grain prices and termination of leases of Indian land, thus limiting land available, that the highest and best use of some of the quarter sections crossed by the transmission line would be as irrigation land to produce the feed and forage necessary for livestock production. Whether in his hands or in the hands of a subsequent owner the value of land is enhanced if it has proven irrigation potential. The trial court properly instructed the jury as to highest and best use under Instruction No. 9 (see footnote 1). The evidence was admissible under the broad language of State Highway Commission v. Hayes Estate, 1966, 82 S.D. 27, 140 N.W.2d 680; Nebraska Electric v. Cady, supra.
Appellant's major effort in rebuttal, as in other cases in this series, was, through its witness, Dr. John Wiersma, to establish the utility of big gun and stationary irrigation systems to reduce the loss of irrigable acres when compared to center pivot irrigation. As in Nebraska Electric v. Tinant, supra, there was sufficient evidence of the relative advantages and disadvantages of various types of irrigation equipment, if applied to respondents' land, to make it a jury question as to whether there were damages occasioned by denial of center pivot irrigation in the future. The trial court committed no error in denying the motion for new trial on that ground.
It is not the function of this court to weigh the evidence or to substitute its judgment for the verdict. As stated in Hopp v. Thompson, 72 S.D. 574, 38 N.W.2d 133, "This record presents a substantial conflict in the evidence. The jurors are the exclusive judges of the weight of the evidence and the credibility of the witnesses, * *." 72 S.D. at 577, 38 N.W.2d at 135.
The verdict of the jury reflects clearly that, following the instructions of the court, it found substantially more damage to those quarter sections of land which had irrigation potential (see footnote 2). There is in this record both competent and substantial evidence to support the verdict resolving the conflicts in evidence, and as we are obligated to do, drawing all reasonable inferences arising therefrom favorable to the respondents. Bentz v. Cimarron Insurance Co., 1962, 79 S.D. 510, 114 N.W.2d 96.
Appellant also alleged as error the admission of testimony of a nonexpert witness in this case. One Duane Swanson of Bassett, Nebraska, whose business was selling irrigation equipment and who had served customers in the immediate vicinity of respondents' land testified he had been on respondents' land and claimed to be familiar with the land and was allowed to *156 testify over objection as to the value of respondents' land. There was no showing that Mr. Swanson owned land in the neighborhood or that he was qualified as an expert. This court has permitted neighboring property owners to testify with minimal foundation as stated by the court in State Highway Commission v. Hayes Estate, supra:
"Whether a witness is properly qualified to render an opinion as to value is a preliminary question of fact to be determined by the trial court and generally a wide discretion is allowed. 1 Orgel on Valuation under Eminent Domain, 2d Ed., § 132. Neighboring property owners usually are permitted to express such opinion on the theory that being owners they are necessarily acquainted with values. Of course, the witness should be familiar with the property taken or damaged, but the extent of his knowledge and familiarity as the foundation for such opinion rests largely with the trial court and its decision will ordinarily not be disturbed unless clearly erroneous." (citations omitted)
Absent some evidence of ownership of land as a neighbor, we cannot approve the trial judge's admitting the testimony as to the land value of the Nebraskan on a foundation of either expertise or as a neighboring property owner.
However, we conclude that the error is without prejudice to appellant since it was merely cumulative. Swanson's testimony was only one of many estimates as to the land value. His valuation at $300 per acre was substantially below the value assigned by the other qualified experts and adjoining landowners and that testimony was adequately discredited on cross-examination. This court has held that "[e]vidence received though inadmissible which tends to be cumulative is generally deemed to be nonprejudicial." Alberts v. Mutual Service Casualty Insurance Co., 1963, 80 S.D. 303, 315, 123 N.W.2d 96, 103.
Judgment is affirmed.
DUNN, C. J., and WINANS and WOLLMAN, JJ., concur.
NOTES
[1] Selected from among the instructions given set forth below, it will be noted that while the instructions generally limited the jury to a consideration of damages separately as to each of the 160-acre tracts affected by the easement, yet instruction No. 8, contrary to the form of verdict supplied, allowed the jury to consider, without finding, damages to the entire tract.

"3
"It is established that the plaintiff's transmission line will run across the following seven 160 acre tracts owned by the defendants, and will be within a 100 foot wide easement area across these tracts, as described in Exhibits 1 and 2, as follows:
"NE¼ Section 9, Twp. 36 N., R. 30 W., covering 5.83 acres
SW¼ Section 10, Twp. 36 N., R. 30 W., covering 4.01 acres
SE¼ Section 10, Twp. 36 N., R. 30 W., covering 5.77 acres
NE¼ Section 15, Twp. 36, N., R. 30 W., covering 1.93 acres
NW¼ Section 30, Twp. 36 N., R. 29 W., covering 3.85 acres
NE¼ Section 30, Twp. 36 N., R. 29 W., covering 6.54 acres.
SE¼ Section 30, Twp. 36 N., R. 29 W., covering 0.96 acres.
"7
"When a portion of tracts of land is subjected to an easement under condemnation proceedings, as here, just compensation due the landowner is that amount which is equal to the difference between the fair market value of each tract immediately before the imposition of the easement, and the fair market value of same tract immediately after the imposition of the easement. In determining the amount of just compensation which you will award to the landowners in this case, you will consider the value of the property before the imposition of the easement and also the depreciation in value, if any you shall find, of each tract after the imposition of the easement.
"In determining the compensation which you will award to the landowners in this case, you must consider each 160 acre unit crossed by the transmission line as a separate tract, and determine the damage on each tract separately.
"8
"You are instructed that fair market value is the highest price for which property can be sold on the open market by a willing seller to a willing buyer, neither acting under compulsion, and both exercising reasonable judgment. Or, to put it another way, fair market value means that sum of money for which the property could be sold by an owner who is ready, willing and able to sell, to a person who is ready, willing, and able to purchase, for cash, or terms equivalent to cash, and neither the seller nor the buyer is under a compulsion to sell or buy. It does not mean the amount which would be obtained on a forced sale. Neither does it mean the amount which might be obtained from a buyer in such a position that he is under peculiar or unusual pressure to purchase this particular property.
"In determining the fair market value of the entire tract you may take into consideration its location, the highest and best uses and purposes for which it is suitable or adaptable, considering such location, and having regard not only to the existing business wants of the community in which it is located, but also to such uses as may be reasonably expected in the near future, together with all surroundings and conditions as shown in the evidence in this case. And you may also take into consideration the opinions of witnesses of other bona fide sales or property in the immediate vicinity and similarly located.
"9
"You are further instructed that in determining the fair market value of the land in question, you must consider its value for the highest and best use for which it is available and adaptable. By the terms "highest and best use to which the land could be put" is meant, either some existing use or one which is so reasonably likely, in the near future, that the availability of the property for that future use would affect its present market price and would be taken into account by a purchaser. This does not mean a use which is remote or merely speculative.
"In order for this land to be valued for uses or purposes other than that to which it was being put when taken or damaged, it must first be shown by a preponderance of the evidence (1) that the property is adaptable to some other use, (2) that such other use is reasonably probable within the reasonably foreseeable future, (3) and that the market value of the land has been enhanced thereby."
[2] The verdict submitted to the jury and returned is set forth as follows:

"We, the jury, find the amount of compensation to be paid the defendants for the property damaged by the easement in each of the seven following tracts of land to be as follows:
NE¼ Section 9, Twp. 36 N., R. 30 W., in the amount of $15,000.00.
SW¼ Section 10, Twp. 36 N., R. 30 W., in the amount of $10,000.00.
SE¼ Section 10, Twp. 36 N., R. 30 W., in the amount of $7,000.00.
NE¼ Section 15, Twp. 36 N., R. 30 W., in the amount of $3,000.00.
NW¼ Section 30, Twp. 36 N., R. 29 W., in the amount of $8,000.00.
NE¼ Section 30, Twp. 36 N., R. 29 W., in the amount of $12,000.00.
SE¼ Section 30, Twp. 36 N., R. 29 W., in the amount of $2,000.00.
Dated this 15th day of May, 1974
 /s/ Wayne O. Shippy _____________
 Foreman"